Mark **RODRIGUEZ**

v.

**Carl L. and M. Caroline TOMES.**

Supreme Judicial Court of Maine.

Argued June 2, 1992.
Decided July 6, 1992.

David K. Fulton (orally), Patricia A. Blickensderfer, Fulton & Blickensderfer, Eliot, for plaintiff.

Daniel R. Warren (orally), Robert M. Knight, Bean, Jones & Warren, Scarborough, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

COLLINS, Justice.

In this claim for wrongful eviction, the jury found for plaintiff, Mark Rodriguez, and awarded him $26,087 plus interest. In response to motions to amend the judgment, the court (York County, *Fritzsche J.*) ordered Rodriguez to remit all damages in excess of $13,920 or face a new trial and awarded him $19,191.05 in attorney fees and expenses. The defendants, Carl and Caroline Tomes contest the verdict and Rodriguez cross-appeals, contesting the remittitur amount. We affirm.

## I.

By written agreement, the Tomes leased a restaurant they owned in York Beach to Rodriguez. Shortly after Rodriguez began to operate the restaurant, the Tomes became dissatisfied with what they perceived as unsanitary conditions: garbage piling up in the parking lot; windows left up; frequent fire alarms; and the strong smell of garbage. The Lease required Rodriguez to keep the restaurant clean and sanitary and not to cause loud noise or odors. The Tomes had also reserved the right to impose "reasonable rules and regulations."

In July, 1988 Rodriguez received a letter from the Tomes' attorney, requesting that he perform certain tasks and restore the restaurant to the desired level of cleanliness. According to the Tomes, Rodriguez complied with the terms of the letter for one day, then reverted to his previous behavior. Acting under the authority of paragraphs 14(a)–(b) of the Lease,[1] the Tomes re-entered the restaurant on the morning of August 22, 1988 and refused to let Rodriguez and his staff enter.

The Tomes testified that they found the restaurant in a state of disarray that morn-

---

1. The Lease provided that, in the event that Rodriguez violated any terms or covenants in the Lease, after giving thirty days' notice, the Tomes could

    enter into and upon the Leased Premises ... and repossess the same as of its former estate, and expel Tenant and those claiming through or under it and remove it or their effects without being deemed guilty of any manner of trespass and without prejudice to any remedies ... and upon entry as aforesaid, this Lease shall terminate.

ing. They found the convection oven covered in grease, two pans of bacon left out, eggs scattered around the kitchen, and the milk machine collecting bacteria. Rodriguez disputed the Tomes' story. He and a waitress who inspected the premises that morning testified that everything was well maintained at that point and throughout his term.

Rodriguez brought his action for wrongful eviction in October 1988. The Tomes filed an answer and counterclaim; Rodriguez answered, and discovery was commenced. When Rodriguez moved to allow foreign counsel to appear pursuant to Rule 89(b) M.R.Civ.P., the Tomes opposed the motion and requested that the complaint be dismissed for failure to comply with the Maine Rules of Civil Procedure. The court (*Perkins, J.*) denied Rodriguez's motion and dismissed his complaint without prejudice. In August, 1990, Rodriguez recommenced the action by filing a new complaint with Maine counsel. His new counsel also filed an answer to the Tomes' counterclaim along with a motion for enlargement of time in which to file the answer and a motion for joinder of claims. After a hearing, despite the Tomes' objections, both motions were granted.

Before trial, the Tomes filed a motion to compel production of documents. The motion requested the production of tax returns and some personal notes. The court (*Fritzsche, J.*) granted the motion in part, indicating that the tax returns and any hand-written notes be turned over.

## II.

■ The Tomes contend that the Superior Court erred by instructing the jury that 14 M.R.S.A. § 6014 (Supp.1991)[2] is applicable. They argue that it should be interpreted to apply to residential leases only.

2. The statute reads, in pertinent part,
   **1. Illegal evictions.** Evictions which are effected without resort to the provisions of this chapter are illegal and against public policy. Illegal evictions include, but are not limited to, the following.

   **B.** No landlord may wilfully seize, hold or otherwise directly or indirectly deny a tenant

In construing a statute, we first look to its language to divine the legislature's intent. *Labbe v. Nissen Corp.*, 404 A.2d 564, 567 (Me.1979). The statute reads, "Evictions which are effected without resort to the provisions of this chapter are illegal and against public policy." 14 M.R.S.A. § 6014. When a statute is unambiguous on its face, its language controls. *Lewiston Raceway v. Harness Racing Com'n*, 593 A.2d 663, 665 (Me.1991). Nothing in the language of the statute indicates that the legislature intended to distinguish between residential and commercial tenants; therefore, despite the Tomes' policy arguments, it applies to both residential and commercial leases.

This interpretation does not interfere with the law's stated policy, to protect tenants from being evicted from their homes without judicial process. *See* (S.P. 152) (L.D. 360) (1981). Nor does it "operate a substantial impairment of a contractual relationship," *N.A. Burkitt, Inc. v. J.I. Case Co.*, 597 F.Supp. 1086 (D.C.Me.1984), citing *Energy Reserves Group Inc. v. Kansas Power and Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983), since the statute was enacted in 1981, and the Lease was not executed until 1988. To the extent that this law abrogates their right to contract for a different mode of eviction, it does so through an express legislative mandate. *See Rubin v. Josephson*, 478 A.2d 665, 671 (Me.1984).

## III.

■ The Tomes contend that the court should not have allowed Rodriguez additional time in which to file an amended answer to their counterclaims. M.R.Civ.P. 6(b) provides,
   (b) Enlargement. When by these rules or by a notice given thereunder by order

access to and possession of that tenant's rented or leased premises, other than through proper judicial process.

of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion ... upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect....

M.R.Civ.P. 6(b). Whether the failure to make a timely filing was excusable is addressed to the court's sound discretion. *Sevigny v. City of Biddeford*, 344 A.2d 34 (Me.1975). "The justice is to decide by his view of expediency, or of the demands of equity and justice." *Id.*

Due only to his original counsel's failure to work with Maine counsel, Rodriguez faced the specter of a default judgment on a counterclaim even though he had filed a timely answer. The Superior Court's decision follows this Court's admonition that M.R.Civ.P. 6(b) should be liberally applied to work substantial justice. *Givertz v. Maine Medical Center*, 459 A.2d 548, 555 (Me.1983). Moreover the Tomes were not prejudiced by the amendment because the amended answer was identical in substance to the original. The decision was not an abuse of discretion.

### IV.

The Tomes reallege a contention presented in a motion for new trial, that Rodriguez's discovery violations deprived them of a fair trial. We review the denial of that motion for a clear and manifest abuse of discretion. *Werner v. Lane*, 393 A.2d 1329 (Me.1978). They contend that Rodriguez violated discovery procedures by not turning over handwritten notes and by not giving them the phone number of his rebuttal witness.

Rodriguez's testimony reveals that he had made some notes, but that they were destroyed prior to the request. This, without more, does not rise to the level of a discovery violation; moreover, the notes were a draft of the damages calculation which was sent to the Tomes. Rodriguez informed the Tomes of the identity and last known address of the waitress who inspected the restaurant with him on the morning of the eviction, but did not give a current phone number. Upon deciding to call her in rebuttal, Rodriguez was able to contact her by telephone. Again the court did not err in finding no violation on these facts.

### V.

The Tomes' final contention is that Rodriguez should not have been awarded attorney fees under 14 M.R.S.A. § 6014(2)(B).[3] They claim that he waived his claim for attorney fees by failing to raise it before the end of the trial and that he failed to establish the reasonableness of the fee request.

Rodriguez's request for attorney fees was presented in a timely motion to amend the judgment. The reasoning in *Moore v. Porter*, 569 A.2d 603 (Me.1990), does not require a motion for attorney fees to be filed before jury deliberation. Such a construction would contradict the statute's direction that the award is determined by the court after an illegal eviction is found. The Tomes did not raise either contention until after the motion hearing. Without an objection from the Tomes, Rodriguez was under no obligation to provide more of a foundation for his fee request than his attorney's affidavit, listing hours spent and billing rates.

### VI.

Rodriguez cross-appeals, claiming that the court erred in calculating the remittitur amount. He suggests that the court subtracted $10,167 from the jury's verdict rather than from the amount the court awarded (the verdict plus $2,000 for a security deposit), depriving him of the

---

3. The Statute reads,

    **2. Remedies.** Upon a finding that an illegal eviction has occurred, the court shall take one or both of the following actions.

    **A.** The tenant shall recover actual damages or $100, whichever is greater.

    **B.** The tenant shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on his behalf in connection with the prosecution or defense of such action, together with a reasonable amount for attorneys' fees.

$2,000 security deposit which it intended to award him.

We are not convinced that the court was mistaken; moreover, an appeal to the Law Court is an inappropriate vehicle for raising this issue.

The entry is:

Judgment affirmed.

All concurring.