SOLOMON'S ROCK TRUST

v.

**Jean V. DAVIS, Personal Representative
of the Estate of Dean L. Davis.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 21, 1996.

Decided April 26, 1996.

David K. Fulton, Fulton & Blickensderfer, Eliot, for Plaintiff.

Edwinna C. Vanderzanden, Hampton, for Defendant.

1. The beneficiaries of the Trust are David Fulton, Patricia Blickensderfer, and each of their spouses.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, and DANA, JJ.

DANA, Justice.

Solomon's Rock Trust[1] appeals from a judgment entered in the Superior Court (York County, *Crowley, J.*) declaring Jean V. Davis, the personal representative of the estate of Dean L. Davis, to be the owner of a parcel of uncultivated land to which the Trust claims ownership through adverse possession pursuant to the common law and 14 M.R.S.A. § 816 (1980). The Trust also contends that the court abused its discretion in granting Davis's motion to extend the time to file her answer and in excluding portions of the Trust's rebuttal evidence. We affirm the judgment.

Evidence presented during the three-day nonjury trial established the following facts. Davis claims title to the property sometimes referred to as Lot D through a recorded chain of deeds tracing back at least to 1863. The relevant part of that chain for purposes of this appeal begins with the conveyance of lot D from Ernest Wakefield to Guy P. Joy in 1928. Joy held the property until he died in 1973. Lot D then passed by devise to Guy P. Joy's nephew, Dean L. Davis. Dean Davis died in 1992 naming his wife as personal representative of his estate. Davis and her husband never visited the parcel. Davis and her predecessor in title paid taxes on the parcel described in their deed. According to the South Berwick tax assessor, however, Davis and her predecessor were taxed from 1978 to 1987 on a parcel designated on tax map 2 as lot 42, located to the west of lot D.[2] At some point the Davises hired William Anderson to survey their property. The survey showed their deed described lot 28 on tax map 2. Dean Davis wrote the town to clarify that his survey showed that his lot was 28 not 42. Thereafter, the Davises paid taxes on lot 28. In 1987 Dean Davis filed with the registry of deeds a notice of claim to lot D.

The Trust also claims title to lot D through a recorded chain of deeds. The Trust also

2. The tax assessor testified that there were no tax records for what the town identified as the Davis lot prior to 1967 and that from 1967 through 1978 there was no way to determine where the town had identified the Davis lot.

hired William Anderson to prepare a survey of the land described in their deed. He testified to the following facts at trial. In 1942 Thomas Davidson conveyed, in relevant part, a twenty-five acre parcel of land to John Moore. In 1947 Moore conveyed a twenty-five acre parcel of land to Perley Monroe that arguably encompassed lot D. According to Anderson, the deed from Moore to Monroe lacked clarity and it was difficult to determine what was intended to be conveyed. In 1955, Monroe conveyed an indeterminate portion of the land that he had bought from Moore, arguably encompassing lot D, to Dominick and Pauline Vizziello. The Vizziellos held the land until 1959 and then sold it to Willard and Pearl Ellis. Pearl Ellis sold the land to the Trust in 1990.

Although the Vizziellos' deed from Monroe is silent regarding the amount of land sold, Dominick testified at trial that he was told by Monroe that he was sold fifteen acres of land. He also testified regarding his use of lot D and abutting lots referred to as lots E–1 and E–2. He stated that he used his property as a junk yard for a year and a half and that he stored fifteen to twenty vehicles on the property, some of which were on lot D and some of which were on lots E–1 and E–2.

Richard Ellis, son of Willard Ellis, testified as to the use of lots E–1, E–2, and D by the Ellis family. He stated that he and his father used the property to cut wood for their woodstove one or two times per year from 1959 to 1965. During that period, the Ellis family used the lot to take walks, camp, ice skate, picnic, and hunt. Richard stated that he left home from 1965 to at least 1973. The record is unclear with regard to where he lived after 1973 but he did not reside at home. He believed that his father continued to cut wood for his home at least once a year until 1984. He also stated that the property was used during the years 1959 through 1984, to pick blueberries, picnic, and take walks. Richard also testified that there was a logging road his father used to access wood on lot D but he was not sure how far into lot D the road went.

The South Berwick tax assessor testified that the Trust's predecessors had paid taxes on lot D from 1949 to 1951 and from 1957 to 1987.

Davis presented the testimony of William Lane, a licensed forester, regarding evidence of timber cutting on lot D. He stated that there was evidence of some wood cutting on the northern end of lot D between twenty and fifty years ago but nothing more recent. To rebut this testimony, the Trust presented the testimony of David Fulton, who stated that he found at least fifteen stumps on the southern end of lot D. The Trust also presented William Anderson, who testified to indications of wood cutting on the southern end of lot D.

The court concluded that the evidence presented by the Trust fell well short of the continuous, exclusive, hostile, actual and open possession of the Davis property required to establish adverse possession of uncultivated lands at common law. It further held that the Trust failed to prove adverse possession pursuant to 14 M.R.S.A. § 816 for two reasons. First, the deed description that the Trust relied on for color of title was insufficient as a matter of law to put Davis on notice of the extent of the claim. Second, the Trust failed to show that its predecessors adversely possessed a material part of lot D. Judgment was entered declaring title to lot D in Davis and this appeal followed.

## I.

The Trust first contends that the court abused its discretion in granting a motion for an enlargement of time to Davis to file her answer because the motion was filed after the 20–day period allowed by M.R.Civ.P. 12(a) and because Davis failed to show excusable neglect. The Trust served its complaint on Davis on July 13, 1992. On August 6, 1992, Davis filed a motion for an extension of time to file an answer and to obtain substitute counsel. Davis filed her answer and counterclaim on August 19, 1992. The Trust then filed an application for default. The court (*Brodrick, J.*) granted the motion for an extension of time and denied the Trust's motion for default.

■ M.R.Civ.P. 6(b) provides in pertinent part that "the court for cause shown may at

any time in its discretion ... (2) upon motion made after the expiration of the specified [time] period permit [an] act to be done where the failure to act was the result of excusable neglect." Whether the failure to make a timely filing was excusable is addressed to the court's sound discretion. *Rodriguez v. Tomes*, 610 A.2d 262, 265 (Me. 1992) (citation omitted). The court is to decide by its view of expediency, or of the demands of equity and justice. *Id.* "An abuse of discretion will be found only in those 'rare instances where extraordinary circumstances would work an injustice.'" *Caron v. City of Auburn*, 567 A.2d 66, 67 (Me.1989) (quoting *Casco Bay Island Transit Dist. v. Public Util. Comm'n*, 528 A.2d 448, 451 (Me. 1987)).

▮▮ Davis's motion stated that her husband was killed in an automobile accident on April 17, 1992, less than three months before the present action was filed. The motion also stated that the Trust's attorney had recently filed an action against Davis's attorney, resulting in the need for Davis to get alternate counsel. The motion for an enlargement of time was filed just three days beyond the applicable 20-day period. In light of the short time frame and the fact that Davis showed extenuating circumstances of her husband's recent death and the need to find alternate counsel, the court certainly did not abuse its discretion in granting the motion. Pursuant to the facts of this case, the finding of excusable neglect was more than amply supported. The court's decision to grant an enlargement of time complies with our directive that M.R.Civ.P. 6(b) should be liberally applied to work substantial justice. *Rodriguez v. Tomes*, 610 A.2d at 265 (citing *Givertz v. Maine Medical Ctr.*, 459 A.2d 548, 555 (Me.1983)).

### II.

▮▮ The Trust next contends that the court erred in finding the evidence insufficient to establish common law adverse possession. The party claiming title by adverse possession must establish the elements "by clear proofs of acts and conduct fit to put a [person] of ordinary prudence, and particularly the true owner, on notice that the estate in question is actually, visibly, and exclusively held by a claimant in antagonistic purpose." *Gammon v. Verrill*, 651 A.2d 831, 832–33 (Me.1994) (quoting *Cates v. Smith*, 636 A.2d 986, 988 (Me.1994)). For the Trust to establish its claim of title to lot D through adverse possession, it had to demonstrate that it maintained a possession of the lot that was "actual, open, notorious, hostile, under a claim of right, continuous, and exclusive for a period of at least twenty years." *Gonthier v. Horne*, 576 A.2d 745, 746 (Me.1990) (quoting *Emerson v. Maine Rural Missions Ass'n*, 560 A.2d 1, 2 (Me.1989)). The determination that the Trust failed to carry its burden of proof may be reversed on appeal only if the evidence compelled a contrary finding. *Gammon v. Verrill*, 651 A.2d at 833.

▮▮ Contrary to the Trust's contentions, the evidence in this case does not compel the conclusion that the Trust established every element of its claim of adverse possession. The testimony by Vizziello and Ellis did not clearly establish the required frequency and intensity of use. Much of their testimony concerned their use of the abutting lots E–1 and E–2. Accordingly, the evidence did not compel the finding that their use satisfied the requirements necessary to gain title through adverse possession.

### III.

▮▮ The Trust next contends that the court erred in finding that the evidence did not establish adverse possession pursuant to 14 M.R.S.A. § 816. In order for the Trust to establish title by adverse possession to lot D pursuant to that statute, it had to claim the land under a recorded deed and demonstrate "exclusive, peaceable, continuous and adverse possession" of the lot, and payment of taxes, all for a period of twenty years. *Estate of Stone v. Hanson*, 621 A.2d 852, 853 (Me. 1993). A deed on record for twenty years that adequately describes the claimed land satisfies the statutory requirement of a "recorded deed." *Id.* at 854. The policy behind the statute is:

> When ... an adverse possessor claims under a recorded deed that defines and describes the extent of the land, title by

adverse possession may be acquired, not just to the portion of land actually physically occupied, but to the entire lot described in the deed. This is so because the prior owner has notice of the *existence* of the claim for adverse possession by virtue of the open notorious use of a *portion* of the land, and notice of the *extent* of the claim from the description in the recorded deed.

*Id.* (citation omitted). The court held that the lack of clarity in the description under which the Trust and its predecessors "claim color of title is insufficient as a matter of law to put defendant on notice of the *extent* of the claim from that description."

■ Notwithstanding the inadequacy of the Trust's evidence concerning the actual, open, and notorious use of lot D, its claim pursuant to 14 M.R.S.A. § 816 fails because the deeds on which it relies for color of title do not adequately describe the claimed land. Anderson testified that in regard to the deed from Moore to Monroe, it was difficult for him as a professional surveyor to determine what was conveyed and what was retained by Moore because there was not enough information presented in the deed. The deeds from Monroe to Vizziello and Vizziello to Ellis contain a call "thence running westerly by and on the line of said Dube land to a corner at land of the Heirs of Lowell B. Joy." Anderson testified that the description could not be followed because the land of Lowell B. Joy was to the west of the land described in the deed. Although he stated that the deed from Monroe to Vizziello described an area that included lot D, he stated that in order to delineate the boundaries he had to disregard a call to the abutter named Dube and a call for a direction in the deed being westerly. The deed is not clear and would not give notice of the extent of an adverse claim. The court, therefore, correctly held that as a matter of law it was insufficient to support a claim pursuant to 14 M.R.S.A. § 816.

## IV.

Finally the Trust contends that the court erred in limiting its rebuttal evidence. Davis presented the testimony of William Lane, a professional forester, regarding the sparse evidence of timber cutting on lot D. He testified that he found no evidence of human habitation on lot D. The Trust attempted to rebut that statement by offering William Anderson's testimony that he saw nine instances of habitation on lot D including abandoned car parts. The court allowed evidence concerning logging roads and timber cutting to be introduced during the Trust's rebuttal but excluded any reference to abandoned car parts. The court reasoned that the thrust of Lane's testimony concerned evidence of timber cutting on lot D. The court held that evidence concerning signs of habitation went beyond Lane's demonstrated expertise and properly fell within the Trust's burden to establish during its case in chief.

■ Rebuttal evidence is proper if it "repels or counteracts the effect of evidence which has preceded it." Field & Murray, *Maine Evidence* § 611.8, at 6–80 (3d ed. Supp.1994) (citing *Emery v. Fisher,* 128 Me. 124, 125, 145 A. 747, 747 (1929)). This Court gives considerable deference to the trial court's "determination of what constitutes proper rebuttal, taking into account the fact that [the trial judge] alone has the opportunity to assess the evidence with the benefit of having heard the testimony sought to be rebutted...." *Id.* (quoting *Payson v. Bombardier Ltd.,* 435 A.2d 411, 413 (Me.1981)).

■ Contrary to the Trust's assertion, the court did not abuse its discretion in limiting the rebuttal testimony to issues of timber cutting. Lane's testimony never mentioned car parts. Although he did state that he did not see signs of habitation, the thrust of his testimony concerned evidence of timber cutting.

The entry is:

Judgment affirmed.

All concurring.