1997 ME 66

**Joanne M. FALVO, et al.**

v.

**PEJEPSCOT INDUSTRIAL PARK, INC.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 7, 1997.

Decided April 4, 1997.

Peter C. Fessenden, Brunswick, for plaintiffs.

Ronald P. Lebel, William H. Stiles, Skelton, Taintor & Abbott, P.A., Auburn, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶] Plaintiffs appeal from a judgment entered in the Superior Court (Sagadahoc County, *Brodrick, A.R.J.*) denying plaintiffs' action seeking a declaration that they had acquired certain property by adverse possession. On appeal plaintiffs argue that the court erred in finding that they failed to prove all the elements of an adverse possession claim. They also argue that the court's denial of their motion to amend the complaint was an abuse of discretion. We conclude that the court did not abuse its discretion in denying plaintiffs' motion to amend, and that the evidence does not compel a finding that plaintiffs proved all the elements

of an adverse possession claim. Accordingly, we affirm the judgment.

[¶ 2] The following facts were presented at the trial: Plaintiffs Joanne M. Falvo, Craig A. Lucas, June F. Ford, and Catherine M. Osborne (now deceased) are the adult children of plaintiff Joseph Lucas ("Mr. Lucas"). The children are the current record owners of a house on a ¼ acre lot (the "Lucas property") at the end of Jones Road in Pejepscot Village, Topsham. The lot has been in the possession and title of the Lucas family since 1925 when Mr. Lucas's parents purchased it. Defendant is the current record owner of a 250 acre parcel of land (the "mill property") that surrounds the Lucas property on three sides.[1] The fourth side of the Lucas lot borders Jones Road and the neighboring Thurlow lot.

[¶ 3] The mill property surrounds, and is part of, an area known as Pejepscot Village, that is comprised of a cluster of twenty homes, a post office/store, and an elementary school. The mill owners ran the village as a "company town" for many years. Although a few mill workers, like the father of Mr. Lucas, owned their homes, the mill owned most of the houses in the village and rented them to mill workers or their families without written leases. Most of the village residents used portions of mill property surrounding their lots for gardens, septic tanks, garages, sewer lines, outbuildings, wood storage, and recreation space.

[¶ 4] Mr. Lucas worked for the mill for forty-six years, and except for a six-month period in 1929, he has lived in the village for over seventy years. Mr. Lucas moved out of his parents' home when he married and lived in various rented houses in the village until he purchased the neighboring Thurlow property in 1960. In 1963 he moved to his father's home and rented out the Thurlow property.

[¶ 5] Mr. Lucas and his father placed stone monuments to mark the boundaries of the Lucas property in 1933. The markers conformed to the description in the father's original 1925 deed. Mr. Lucas acquired title to the Lucas property upon his father's death in 1967. In 1984 he sold the Thurlow property reserving a small strip of land to enlarge the Lucas property. He placed an iron pipe to mark the new boundary with the Thurlow property. In 1989 he sold the Lucas property to plaintiffs, his adult children. This conveyance was accomplished with the help of an attorney, and the deed description tracked the boundaries established by the original deed.

[¶ 6] The Lucas family has occupied and used an area of land within the mill property on all three sides of their deeded property since 1925. They claim this area by adverse possession referring to it as the area within the "mow limits." They have kept the area mowed, using it for recreation, storage, septic, and gardening purposes. They have continuously maintained gardens, a horseshoe pitching area and several lawn ornaments within the mow limits. In 1933 Mr. Lucas's father installed a septic tank and drain field within the mow limits. Mr. Lucas replaced the septic system in 1967. The Lucases also raised chickens and built two hen houses within the mow limits, replacing the hen houses with a storage shed in 1965.

[¶ 7] Plaintiffs filed a complaint to quiet title and to obtain a declaration that they are the lawful owners of the land within the mow limits. After the first day of a two-day, jury-waived trial, plaintiffs moved to amend their complaint to allege a prescriptive easement claim for the septic system. The court denied the motion as untimely. At the conclusion of the trial, the court found that plaintiffs' possession and use of the disputed land were actual, open, notorious, continuous and exclusive for the statutory twenty-year period. It denied plaintiffs' claim, however, because it found that plaintiffs failed to prove that their possession and use were hostile and under a claim of right. The court also noted that an amended complaint alleging a prescriptive easement would fail for the same reason the adverse possession claim failed. Plaintiffs now appeal.

---

1. Since 1925 the mill property has been owned successively by Pejepscot Paper Company, the Hearst Corporation, St. Raymond Paper, Swiss Bank, and now Pejepscot Industrial Park, Inc. We refer to the owners collectively as the "mill owners" and their land as the "mill property."

[¶ 8]  A party claiming title by adverse possession under the common law must prove that their possession and use of the property were "actual, open, notorious, hostile, under a claim of right, continuous, and exclusive for a period of at least twenty years." *Solomon's Rock Trust v. Davis,* 675 A.2d 506, 509 (Me.1996).  The elements of adverse possession must be established by "clear proofs of acts and conduct fit to put a person of ordinary prudence, and particularly the true owner, on notice that the estate in question is actually, visibly, and exclusively held by a claimant in antagonistic purpose." *Id.*  Whether specific acts are sufficient to establish the elements of adverse possession "can only be resolved in light of the nature of the land, the uses to which it can be put, its surroundings, and various other circumstances." *Emerson v. Maine Rural Missions Ass'n,* 560 A.2d 1, 2 (Me.1989).

[¶ 9]  First, plaintiffs argue that the court applied an erroneous legal standard by requiring them to give "unusual notice" of their claim to defendant, and by creating a "company town exception" to the notice requirement.  Contrary to plaintiffs' contention, the court properly considered all the surrounding circumstances, including "the nature of the land ... its surroundings and various other circumstances," to determine whether plaintiffs' acts were sufficient to put defendant on notice of a hostile claim of right.  *Id.*  In considering the "other circumstances" referred to in *Emerson,* the court considered the fact that Pejepscot Village was a "company town."  The court found that the mill owners allowed and encouraged workers to use company property adjacent to their homes, and never refused permission for such use.  The court also found that Mr. Lucas and his father used the land "exactly as every one else was using it."  The court concluded that if they had asked permission, the mill would have granted it.  In these circumstances, the court ruled that "an ordinary man of prudence in the company's management would not be put on notice of the [plaintiffs'] 'antagonistic purpose.'"  The court concluded that plaintiffs would have had to have "done something unusual" to supply the requisite notice, such as posting the land, building a fence, or giving written

notice.  The court reached this conclusion by applying the correct legal standard to an unusual set of facts and circumstances.

[¶ 10]  Next, plaintiffs argue that the court's lack-of-notice determination is not supported by competent evidence in the record, and that the evidence compels a contrary finding.  Plaintiffs have the burden of establishing "by clear proofs of acts and conduct" each of the elements of an adverse possession claim.  *Solomon's Rock,* 675 A.2d at 509.  The court's determination that plaintiffs failed to meet its burden of proof will be reversed on appeal only if the evidence compels a contrary finding.  *Id.*  In support of their argument plaintiffs contend that, unlike other residents, they never sought permission from the mill for their use of mill land, and that their open and notorious use of the land over 70 years was more than enough to put a prudent person on notice.

[¶ 11]  There is evidence in the record that suggests that plaintiffs used company land in the same manner as other residents, that no residents were denied permission to use the land, and that plaintiffs complied with the mill owners' customary request that residents keep the mill property clean and neat.  The evidence also establishes that plaintiffs marked their deeded land with cement monuments, never marked the boundaries of the mow limits, and never paid taxes on the land within the mow limits.  Contrary to plaintiffs' contention, the evidence does not compel a finding that their use of the land was hostile.

[¶ 12]  Plaintiffs' final argument, that the court abused its discretion by denying their oral motion at trial to amend the complaint, is without merit.  Leave to amend "shall be given when justice so requires." M.R.Civ.P. 15(a).  The decision to deny a request to amend a pleading, however, rests with the sound discretion of the court.  *Kelly v. Michaud's Ins. Agency, Inc.* 651 A.2d 345, 347 (Me.1994).  The denial of such a request will be reversed on appeal only if the moving party clearly demonstrates a manifest abuse of discretion and the necessity to grant the motion to prevent injustice.  *Id.*  Plaintiffs

have failed to meet their burden in both respects.

[¶ 13] First, they have failed to demonstrate a manifest abuse of discretion. A claimant asserting a prescriptive easement must prove that the true owner knew of the adverse claim and acquiesced. *Glidden v. Belden,* 684 A.2d 1306, 1317 (Me.1996). "Proof of the owner's acquiescence is an essential element in the establishment of a prescriptive easement." *Id.* "On this point, the acquisition of an easement by prescription differs, in Maine, from the acquisition of title by adverse possession." *Pace v. Carter,* 390 A.2d 505, 507 n. 2 (Me.1978). Amending the complaint in mid-trial to allege a new claim with an additional element of proof could have prejudiced defendant, who had already completed cross-examination of several key witnesses. Therefore, we cannot conclude that the court abused its discretion by denying plaintiffs' motion. *Hamor v. Maine Coast Memorial Hosp.,* 483 A.2d 718, 720 (Me.1984) (the imminence of a scheduled trial was sufficient justification for denial of a motion to amend).

[¶ 14] Plaintiffs have also failed to demonstrate the necessity of granting the motion to prevent injustice. The court ruled that the prescriptive easement claim would have failed for the same reason the adverse possession claim failed, lack of notice of a hostile claim of right. Plaintiffs have failed to provide any authority or evidence to compel a contrary determination.

The entry is:

Judgment affirmed.

