1998 ME 51

**THOMPSON'S POINT, INC.**

v.

**GATES FORMED–FIBRE PRODUCTS, INC.**

Supreme Judicial Court of Maine.

Argued Feb. 4, 1998.
Decided March 9, 1998.

Ralph A. Dyer (orally), Law Offices of Ralph A. Dyer, Portland, for plaintiff.

Martha C. Gaythwaite (orally), Harold J. Friedman, Friedman, Babcock & Gaythwaite, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

ROBERTS, Judge.

[¶ 1] Thompson's Point, Inc., appeals from the judgment entered in the Superior Court (Cumberland County, *Calkins, J.*) granting a summary judgment in favor of Gates Formed–Fibre Products, Inc. On appeal, Thompson's Point contends that the court erred in granting Gates's motion for a summary judgment and in refusing to grant it leave to amend its complaint. We affirm the judgment.

[¶ 2] In March 1995 Gates entered into an agreement with Barchild, Inc., a company owned and operated by Rocco J. DiSanto, Sr. DiSanto invented a furnace that burns pulverized waste and produces energy without generating residue. The furnace could burn felt trim generated at Gates's facility in Auburn. Hoping to cultivate a market for its product, Gates agreed to provide DiSanto with twenty-five million pounds of felt trim to experiment with his furnace and for other recycling endeavors.

[¶ 3] DiSanto entered into an agreement with Thompson's Point through Peter Van-Wyck, its sole stockholder, to rent warehouse space located on its property in Portland. Thompson's Point rented the space to DiSanto without a written lease. DiSanto defaulted on the rental agreement and abandoned the premises, leaving Thompson's Point to dispose of approximately 4,500 tons of the felt trim.

[¶ 4] In November 1995 Thompson's Point filed a complaint in the Superior Court against Gates, Barchild, and DiSanto.[1] The complaint charged that Gates was vicariously liable for DiSanto's alleged torts and for the breach of the rental agreement between Thompson's Point and DiSanto. Thompson's Point also alleged that Gates was negligent in employing DiSanto and was liable for the damages that Thompson's Point suffered as a result of that employment.

[¶ 5] In September 1996 Thompson's Point filed a motion for leave to amend its complaint. In its amended complaint, Thompson's Point added an additional breach of contract count, claiming that Gates was liable as an undisclosed principal, and amended its original breach of contract claim, asserting that Gates and DiSanto were joint venturers.

[¶ 6] In September 1997 the court granted Gates's motion for a summary judgment, holding that there was no evidence that DiSanto acted as Gates's agent, joint venturer, or employee. The court further concluded that there was no evidence that Gates was

---

1. Barchild and DiSanto were later removed from the complaint after DiSanto filed a bankruptcy petition.

directly liable to Thompson's Point for negligence because it did not owe Thompson's Point a duty of care. The court denied Thompson's Point's motion to amend its complaint because the proposed amended complaint "add[ed] nothing to the case." This appeal followed.

[¶ 7] "A summary judgment is proper when the party that bears the burden of proof of an essential element at trial has presented evidence that, if it presented no more, would entitle the opposing party to a judgment as a matter of law." *Jacques v. Pioneer Plastics, Inc.*, 676 A.2d 504, 506 (Me.1996). In reviewing a grant of a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment has been granted and review the trial court's decision for errors of law. *Id.*

[¶ 8] Thompson's Point's multicount complaint essentially charges that Gates is liable for the torts and contractual obligations of DiSanto because he acted as its agent or joint venturer. The contract between Gates and DiSanto, however, explicitly states that he was an independent contractor and not an agent employed by Gates. Although in limited circumstances an independent contractor can be an agent, there is no evidence that Gates physically supervised DiSanto's activities. *See Bonk v. McPherson*, 605 A.2d 74, 78 (Me.1992). Moreover, Gates did nothing to create a belief on the part of Thompson's Point that DiSanto was acting as its agent. There is also no evidence that Gates and DiSanto "pool[ed] their efforts and resources to jointly seek profits," and they were therefore not acting as joint venturers. *Nancy W. Bayley, Inc. v. Maine Employment Sec. Comm'n*, 472 A.2d 1374, 1377 (Me. 1984).

[¶ 9] Thompson's Point also contends that Gates is directly liable to it because it knew or should have known that DiSanto did not have the resources to dispose of the trim and would eventually abandon it, leaving an unsuspecting Thompson's Point to clean up the mess. We disagree.

The record reveals that Thompson's Point dealt directly with DiSanto and had a full opportunity and the ability to investigate his plans for use of the felt trim. Thompson's Point never contacted Gates to inquire about its knowledge of DiSanto's plans or resources. Its own action in entering into a rental agreement with DiSanto without a written lease belies its claim that Gates somehow should have known that DiSanto's venture would fail.

[¶ 10] Thompson's Point's final argument is that the court erred in refusing to grant it leave to amend its complaint. Because we agree with the court's conclusion that the amended complaint added nothing to the case, we conclude that the court acted within the bounds of its discretion in refusing to grant Thompson's Point leave to amend its complaint. *Falvo v. Pejepscot Indus. Park, Inc.*, 1997 ME 66, ¶ 12, 691 A.2d 1240, 1243–44.

The entry is:

Judgment affirmed.