STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-17-102

WALTER SCOTT MOODY,

    Plaintiff

    v.

HEIRS OF EDNA O. RIDEOUT
and AMBER MASON,

    Defendants

ORDER ON PENDING
MOTIONS

REC'D CUMB CLERKS OF
NOV 8 '18 PM 12:45

Before the court are defendant Amber Mason's motion to set aside default of the heirs of

Edna Rideout and motion for leave to amend answer and plaintiff Walter Scott Moody's motion

for default judgment and second motion for summary judgment. For the following reasons

defendant Mason's motions are granted and plaintiff's motions are denied.

I.    Background

The court incorporates by reference the factual background in the order filed on June 13,

2018 on plaintiff and defendant Mason's motions for summary judgment and includes the

following additional facts.

On June 13, 2017, plaintiff moved for service by publication on the heirs.[1] This motion

was supported by the affidavit of Tarilyn Thorso, a paralegal from Preti Flaherty, stating that the

heirs could not be located after a diligent search. Defendant Mason did not object to this motion.

On June 27, 2017, the court granted the plaintiff's motion for service by publication on the heirs.

---

[1] On April 18, 2017, before the heirs were served, plaintiff filed a motion for injunctive relief and the parties filed memoranda. A consent order was signed on May 1, 2017. On May 23, 2017, before the heirs were served, plaintiff filed a motion to dismiss defendant's counterclaim and the parties filed memoranda. On June 27, 2017, the court stayed action in the case until the heirs were served.

1

Plaintiff posted notice in the Portland Press Herald for three consecutive weeks, July 7, July 14, and July 21, 2017, satisfying the service requirement. On August 31, 2017, plaintiff requested an entry of default against the heirs. Defendant Mason did not oppose this motion. Default was entered against the heirs on October 2, 2017.

On June 13, 2018, the court issued an order on both plaintiff and defendant Mason's motions for summary judgment. In that order the court found that: (1) defendant Mason did not own title to the disputed intertidal land, and (2) genuine issues of material facts existed as to whether plaintiff had adversely possessed the intertidal ledge.

Defendant Mason has learned that there are heirs of Edna O. Rideout living in Maine but not in Cumberland County. (Dunphy Aff.) Several heirs have transferred any interest in the intertidal zone conveyed to Edna O. Rideout to defendant Mason. (Dunphy Aff., Exs B-K.)

Following the June 13, 2018, order on plaintiff and defendant Mason's motions for summary judgment, the following motions were filed: (1) July 20, 2018, defendant Mason filed a motion to set aside default of the heirs, (2) July 27, 2018, defendant Mason filed a motion for leave to amend or supplement answer, (3) August 8, 2018, plaintiff filed a motion for default judgment of the heirs, and (4) August 8, 2018, plaintiff filed a second motion for summary judgment.

II.     Defendant Mason's Motion to Set Aside Default of the Heirs of Edna O. Rideout.

Defendant Mason argues: (1) there is good cause to set aside the default pursuant to Rule 55(c) because the search for the heirs was based on the incorrect conclusion that the heirs were deceased and the surviving heirs never received personal service, and (2) defendant Mason has a meritorious defense because some of the heirs transferred their interest in the land to her, which gives her standing to challenge plaintiff's adverse possession and quiet title claims. Plaintiff argues: (1) defendant Mason does not have standing to assert the legal rights of the heirs, and (2)

2

defendant Mason's motion should be denied because it is untimely and there is no good cause to set aside the default.

Defendant Mason may proceed pursuant to rule 25. M.R. Civ. P. 25(c). Rule 25(c) allows for substitution of a party when there is a transfer of interest. Id. "Rule 25(c) substitution implements a discretionary determination by the trial court to facilitate the conduct of the litigation." Maysonet-Robles v. Cabero, 323 F.3d 43, 49 (1st Cir. 2003). The transferee is "brought into court solely because it has come to own the property in issue. The merits of the case and the disposition of the property are still determined vis-a-vis the originally named parties." Id. (quoting Minn. Mining & Mfg. Co. v. Eco Chem. Inc., 757 F.2d 1256, 1263 (Fed. Cir. 1985).

Rule 55(c) states that "for good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." M.R Civ. P. 55(c). To establish good cause, "a party must show a good excuse for his or her untimeliness and a meritorious defense." Levine v. Keybank Nat'l Ass'n, 2004 ME 131, ¶ 20, 861 A.2d 678 (quoting Truman v. Browne, 2001 ME 182, ¶ 9, 788 A.2d 168. "The good excuse and the meritorious defense requirements are two distinct components, both of which must be satisfied in order to prevail on a Rule 55(c) motion." Levine, 2004 ME 131, ¶ 20, 861 A.2d 678 (quotation marks omitted).

Rule 4(g) allows for service to be completed by publication upon "showing that service cannot with due diligence be made by another prescribed method." M.R. Civ. P. 4(g). Inaccuracies or errors in service ordinarily do not result in treating "actual notice as a nullity." Philips v. Johnson, 2003 ME 127, ¶ 28, 834 A.2d 938. "Receipt of actual notice is not constitutionally mandated, but an adequate attempt at actual notice is required." Gaeth v. Deacon, 2009 ME 9, ¶ 21, 964 A.2d 621. As noted by the Law Court, "the adequacy of the notice is reviewed from the

time that the notice is given, and not after the fact." Id. at ¶ 21 n.3. Service by publication is inadequate when notice is published in a newspaper circulated in a county with which defendant had no present or past connections. Id. at ¶ 27.

The service by publication in this case was based on plaintiff's inaccurate submission to the court that the heirs of Edna O. Rideout were deceased. Notice of this lawsuit does not appear to have been received. See Phillips, 2003 ME 127, ¶ 28, 834 A.2d 938. Under these circumstances, plaintiff's objection that defendant's action is untimely and that she has not established good cause is unavailing. Defendant Mason's motion to set aside default of the heirs of Edna O. Rideout is granted.

III.     Defendant Mason's Motion for Leave to Amend or Supplement Answer.

Defendant Mason argues that she may amend her pleadings because leave to amend should be freely given and the amendment will not prejudice the plaintiff. Plaintiff argues that the motion is untimely because it raises a completely new theory after defendant Mason's original theory failed on the motion for summary judgment, and any amendment would be futile because of the entry of default against the heirs.

"[U]ndue delay, bad faith, undue prejudice, or futility of amendment are grounds for denying a motion to amend." Paul v. Town of Liberty, 2016 ME 173, ¶ 9, 151 A.3d 924 (quotation marks omitted). In her motion to amend, defendant Mason proposes to amend her complaint to add information about the heirs and to add a count for declaratory judgment based on rights transferred to her from several of the heirs. (Def.'s Mot. Amend Ex. A.) Again, based on the circumstances of this case, the court does not find that undue delay, bad faith, undue prejudice, or futility of amendment are present to defeat the motion. Defendant Mason's motion to amend is granted.

4

IV.    Plaintiff's Motion for Default Judgment.

The default of the heirs of Edna Rideout has been set aside. Plaintiff's motion for default judgment is denied.

V.    Plaintiff's Second Motion for Summary Judgment.

Based on the above rulings, plaintiff's second motion for summary judgment is denied without prejudice.

The entry is

> Defendant Mason's Motion to Set Aside Default of Heirs of Rideout is GRANTED.
>
> Defendant Mason's Motion for Leave to Amend or Supplement Answer is GRANTED.
>
> Plaintiff's Motion for Default Judgment is DENIED.
>
> Plaintiff's Second Motion for Summary Judgment is DENIED without prejudice.

Date:   November 5, 2018

Nancy Mills
Justice, Superior Court

Entered on the Docket:   11-6-18

5

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-17-102

WALTER SCOTT MOODY,

REC'D CUMB CLERKS OI
JUN 13 '18 PM1:20

Plaintiff

v.

ORDER ON PENDING MOTIONS

HEIRS OF EDNA O. RIDEOUT
and AMBER MASON,

Defendants

Before the court are defendant and counterclaim plaintiff Amber Mason's motion for partial summary judgment and plaintiff and counterclaim defendant Walter Scotty Moody's cross-motion for partial summary judgment. Defendant Mason seeks a judgment in her favor on count I of her counterclaim and on counts I, II, III, and IV of plaintiff's complaint. Plaintiff seeks a judgment in his favor on the same counts. For the following reasons, defendant Mason's motion is denied and plaintiff's motion is denied in part and granted in part.

Background

The dispute in this action centers on the ownership of a ledge located in intertidal land adjacent to separate upland parcels of land owned by the plaintiff and defendant Mason. (Def. Mason's Supp'g S.M.F. ¶¶ 4, 6, 7, 27; Pl.'s Opp'g S.M.F. ¶¶ 4, 6, 7.) On April 18, 2017, plaintiff filed a complaint against both defendant Mason and the heirs of Edna O. Rideout and alleged four causes of action: count I, quiet title; count II, adverse possession; count III, prescriptive easement; and count IV, declaratory judgment. On May 4, 2017, defendant filed an answer and counterclaim and alleged seven causes of action: count I, declaratory judgment; count II, expungement; count III, slander of title; count IV, trespass; count VI, nuisance; count VII, intentional infliction of

1

emotional distress; and count VIII, punitive damages. On October 2, 2017, default was entered against defendants Heirs of Edna Rideout. On October 5, 2017, the court dismissed count II of defendant's counterclaim. On October 23, 2017, defendant filed an amended counterclaim containing an additional cause of action: count IX, common law trespass.

On February 13, 2018, defendant Mason filed a motion for partial summary judgment on all of plaintiff's causes of action as well as count one of her counterclaim, in which she seeks declaratory relief. On March 12, 2018, plaintiff filed an opposition to defendant's motion as well as a cross motion for partial summary judgment on the same counts. On April 11, 2018, defendant Mason filed a reply to plaintiff's opposition and an opposition to plaintiff's cross-motion for summary judgment. On April 24, 2018, plaintiff filed a reply in support of his cross-motion for summary judgment.

Standard of Review

Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." Lougee Conservancy v. CitiMortgage, Inc., 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted). When reviewing cross-motions for summary judgment, the court "analyze[s] each motion separately, giving the opposing party the benefit of any reasonable inferences that can be drawn from the presented facts." F.R. Carrol, Inc. v. TD Bank, N.A., 2010 ME 115, ¶ 8, 8 A.3d 646.

Analysis

### 1. Defendant Mason's Counterclaim Count One: Declaratory Judgment

Both plaintiff and defendant Mason request that summary judgment should be granted in their favor on count one of defendant Mason's counterclaim, in which she seeks a declaration that defendant Mason owns the disputed intertidal land. Plaintiff argues that defendant Mason cannot obtain declaratory relief because (1) plaintiff has obtained title by adverse possession and (2) defendant Mason does not hold record title to the disputed intertidal land. Defendant Mason argues that (1) her chain of title unambiguously shows that she is the record title owner of the property and (2) plaintiff cannot establish a claim for adverse possession because his and his family's use of the intertidal land for fishing activities is a permitted public use. The court first addresses whether defendant Mason has obtained title to the disputed land by deed.

"Construction of the language of a deed . . . is a question of law. The existence and nature of particular boundaries is a question of law and the location of those boundaries is a question of fact." Eaton v. Town of Wells, 2000 ME 176, ¶ 19, 760 A.2d 232 (internal citation omitted). When interpreting a deed, the court determines the controlling intent of the parties from the face of the deed. Snyder v. Haagen, 679 A.2d 510, 513 (Me. 1996). Parties to a deed must follow certain rules of law to effectuate their intent; a failure to do so may result in consequences the parties did not intend. Hodgdon v. Campbell, 411 A.2d 667, 672 (Me. 1980). One such rule is that "as a matter of law a deed reference 'by the shore' calls for a measurement along the contour of the high-water mark." Id.

Both parties agree that the first deed in defendant's chain of title, the 1924 Wallace to Rideout deed, included title to the intertidal land. (Def. Mason's Supp'g S.M.F. ¶ 3; Pl.'s Opp'g S.M.F. ¶ 3; Pl.'s Supp'g S.M.F. ¶¶ 75-77; Def. Mason's Opp'g S.M.F. ¶¶ 75-77.) The parties,

however, dispute whether subsequent deeds, beginning with the 1931 Rideout to Blackwell deed, conveyed title to the intertidal land. (Pl.'s Supp'g S.M.F. ¶¶ 80-81; Def.'s Opp'g S.M.F. ¶¶ 80-81.) The Wallace to Rideout Deed describes the property boundaries as follows:

> [b]eginning at an iron bolt in the ledge on said shore; thence running northerly along said river one hundred and forty feet (140) an iron rod and oak tree and a corner; thence westerly . . . to another oak tree . . . thence southerly . . . to an iron rod . . . thence easterly . . . to the shores of New Meadows River and the iron rod at the point of beginning.

(Pl.'s Supp'g S.M.F. ¶ 76; Barnicle Aff. Ex. A(i).) The subsequent Rideout to Blackwell deed describes the property as follows:

> [b]eginning at an iron bolt set in the ledge on the shores of New Meadows River; thence running northerly along the said shores of the New Meadows River one hundred forty (140) feet to an iron rod and an oak tree and a corner; thence westerly . . . to another oak tree . . . thence southerly . . . to an iron rod . . . thence easterly to the shores of said New Meadows River and the iron rod which is the point of beginning.

(Pl.'s Supp'g S.M.F. ¶ 80; Barnicle Aff. Ex. A(ii).) All but one of the subsequent deeds use the same "along the said shores" and "to the shores" language. (Pl.'s Supp'g S.M.F. ¶ 81; Barnicle Aff. Ex.'s A(iii)-(v), A(vii)-(x).) The August 13, 1964 deed from Walter Wallace to Beatrice Lucas describes the lot as "a certain lot or parcel described in Paragraph 1 of a Warranty Deed from Robert S. Watson to Walter L. Wallace dated May 23, 1950." (Barnicle Aff. Ex. A(v).) The May 1950 Watson to Wallace deed uses the "along the said shores" and "to the shores" language. (Barnicle Aff. Ex. A(iv).)

In this case, the Rideout to Blackwell deed describes the first boundary as running "along the said shores" of New Meadows River and the last boundary as running "to the shores". (Pl.'s Supp'g S.M.F. ¶ 80.) Plaintiff, citing Hodgdon, argues that, as a matter of law, this language only conveyed title to the high-water mark. See Hodgdon, 411 A.2d at 672. Defendant Mason argues that the Hodgdon decision is distinguishable and that the deed conveyed title to the intertidal land

4

because its uses the terms "along" instead of "by" and "shores" instead of "shore." According to defendant Mason, "shores" should be construed to mean the shoreline at both low and high tide.

As the Law Court clearly stated in Hodgdon, the use of the term "by the shore" sets the boundary "along the contour of the high-water mark." Id. (emphasis added). Accordingly, the court finds that there is no discernable difference between the use of the term "by" and the use of the term "along." The use of either term in reference to the shore sets the boundary at the high-water mark. See id.; see also Knud E. Hermansen & Donald R. Richards, Maine Principles of Ownership Along Water Bodies, 47 Me. L. Rev. 35, 54 n.66 (1995).

Similarly, the use of the plural form of shore should not be interpreted any differently than the use of the singular form. The shore is defined as "the ground between the ordinary high and low water mark." Hodgdon, 411 A.2d at 672 (quoting Montgomery v. Reed, 69 Me. 510, 514 (1879)). When used in its plural form, "shores" refers to multiple areas that are bounded by the high and low water marks and not the boundaries of the shore itself. The shore is also known as "the flats." See Bell v. Wells, 557 A.2d 168, 172 (Me. 1989) (quoting Shively v. Bowlby, 152 U.S. 1 (1894)). In this context, a reference to "the shores" in a deed call is equivalent to a reference to "the shore."

Because the Rideout to Blackwell deed used the term "along the shores," it conveyed title only to the high-water mark and did not include title to the intertidal land abutting the property. See Hodgdon, 411 A.2d at 672. The subsequent deeds in defendant Mason's chain of title also could not have conveyed title to the intertidal land. See Calthorpe v. Abrahamson, 441 A.2d 284, 287 (Me. 1982) ("A grantor can convey effectively by deed only that real property which he owns."). Because defendant Mason does not have record title to the intertidal land, summary judgment is granted in favor of plaintiff on count one of defendant Mason's counterclaim.

5

## 2. Plaintiff's Complaint Count One: Quiet Title

Defendant Mason seeks summary judgment on plaintiff's quiet title action on the ground that plaintiff's possession of the ledge has not been exclusive for the four years preceding this action. Pursuant to 14 M.R.S. § 6651, a plaintiff may bring a quiet title action if he has been in continuous and exclusive possession for the four years preceding the action. 14 M.R.S. § 6651 (2017); Chickering v. Yates, 420 A.2d 1219, 1223 (Me. 1980); accord Levis v. Kontizky, 2016 ME 167, ¶ 24, 151 A.3d 20.

In her statement of material facts, defendant Mason asserts that she has had continuous and exclusive possession of the intertidal land including any rocky outcropping adjoining the upland portion of her lot. (Def. Mason's Supp.'g S.M.F. ¶ 31.) Plaintiff denies this statement of fact and asserts that defendant has never been on the ledge and that he has had exclusive possession of the ledge up to the present. (Pl.'s Opp'g S.M.F. ¶ 31; Pl.'s Supp'g S.M.F. ¶ 82.) Plaintiff has therefore made a prima facie showing that he has had exclusive possession for the prior four years and is, therefore, entitled to quiet title relief. See Levis, 2016 ME 167, ¶ 24, 151 A.3d 20 (plaintiff failed to make a prima facie showing that he was entitled to quiet title relief when he admitted that his use of property was not exclusive for more than four years preceding the action). Accordingly, defendant Mason's motion for summary on plaintiff's count one is denied.

The quiet title statute, however, "does not provide an independent basis for a claim of title." Id. For reasons discussed below, genuine issues of material fact exist concerning the title to the disputed land. Accordingly, plaintiff's motion for summary judgment on count one of his complaint is also denied.

6

to fish encompasses passive activities that are not incidental to the act of fishing itself. Instead, the Law Court's statement that "fishing" should be "broadly construed" appears to indicate that courts should construe "fishing" as the attempt to harvest a variety of sea creatures and not just fish. See Bell, 557 A.2d at 173 (defining fishing to include digging for clams, worms and shellfish). In contrast to loading and unloading fishing equipment upon the shore, it is not necessary that such equipment be permanently stored in the intertidal zone when it is not in use and it is therefore not reasonably incidental to the act of fishing. See id.

Further, the public's right to use the intertidal zone for fishing, fowling, and navigation is not absolute and the fee owner of the intertidal zone retains certain advantages over the public. Duncan v. Sylvester, 24 Me. 482, 486 (1844). For instance, while members of the public may fish the mudflats, they are not "entitled to place weirs, or other permanent erections, upon those flats, or to set [their] nets or seines, making them fast in the usual way by grapplings to the shore." Id. (internal quotation omitted). There is no apparent difference between the interference caused by the erection of a structure used for fishing and the seasonal storage of fishing equipment in the intertidal zone. The court concludes that the use of the intertidal land for the storage of fishing equipment is not a fishing activity permitted by the Colonial Ordinance of 1641.[1]

### b. Title by Adverse Possession

"In order to establish title by adverse possession, [plaintiff] had to present evidence that [he] possessed the land for a twenty-year period, and that the possession was 'actual, open, visible, notorious, hostile, under a claim of right, continuous, and exclusive.'" See McGeechan v.

---

[1] Defendant Mason also cites to Alden v. Moody, No. RE-04-001, at *5 (Me. Dist. Ct., West Bath, July, 14, 2006) and Alden v. Town of Harpswell & Walter Scott Moody, No. AP-03-076, 2005 Me. Super. LEXIS 159, at *3 (Nov. 22, 2005) to support the proposition that plaintiff's use of the ledge has been for fishing activities. While these cases do accurately state that using intertidal land for fishing would be insufficient to establish title by adverse possession, neither court determined whether plaintiff's activities alleged in this case would be considered fishing in the first instance.

8

Sherwood, 2000 ME 188, ¶ 51, 760 A.2d 1068 (quoting Dowley v. Morency, 1999 ME 137, ¶ 19, 737 A.2d 1061). "Whether specific acts are sufficient to establish the elements of adverse possession 'can only be resolved in light of the nature of the land, the uses to which it can be put, its surroundings, and various other circumstances.'" Falvo v. Pejepscot Indus. Park, 1997 ME 66, ¶ 10, 691 A.2d 1240 (quoting Emerson v. Maine Rural Missions Ass'n, 560 A.2d 1, 2 (Me. 1989)). "The elements of adverse possession must be established by 'clear proofs of acts and conduct fit to put a person of ordinary prudence, and particularly the true owner, on notice that the estate in question is actually, visibly, and exclusively held by a claimant in antagonistic purpose.'" Solomon's Rock Trust v. Davis, 675 A.2d 506, 509 (Me. 1996); see also Weeks v. Krysa, 2008 ME 120, ¶ 13, 955 A.2d 234. Whether an act is sufficient to constitute adverse possession is an issue of law for the court to decide. Dombkowski v. Ferland, 2006 ME 24, ¶ 28, 893 A.2d 599. Whether an act actually occurred is a question of fact. Id.

To obtain title by adverse possession, the claimant must establish more than "casual, seasonal use of an undeveloped waterfront lot." Weeks, 2008 ME 120, ¶¶ 2, 21, 955 A.2d 234. In Weeks, the Law Court held that the plaintiffs' maintenance of a garden, clearing of trees and brush, payment of taxes, and use for seasonal recreational activities were not sufficient to establish a claim for adverse possession of a vacant waterfront lot. Id. ¶¶ 17-21. In arriving at this conclusion, the Weeks Court noted that Maine has a tradition of open access to nonposted fields and woodlands. Id. ¶ 15.

In Weinstein v. Hurlbert, the Law Court also held that the seasonal mowing, planting of rose bushes, minimal gardening, a one-time temporary storage of supplies, and removal of a notice posted by the record owner was "not sufficiently hostile and notorious to put the true owner on notice" that the plaintiffs claimed title to the land. 2012 ME 84, ¶¶ 11, 12, 45 A.3d 743. As in

9

Weeks, the Weinstein Court noted that Maine has an open lands policy as well as a "public policy disfavoring the acquisition of land through adverse possession." Id. ¶ 12. Unlike in Weeks, the land in question was not a "vacant shorefront lot" but was instead a "waterfront lawn of a house." Id. ¶ 11.

In this case, plaintiff claims that he and his family[2] used the ledge to store hundreds of lobster traps during the fishing season along with other fishing gear and equipment, that a skiff was moored on the ledge, that a wooden platform was constructed on the ledge, that large scallop and oyster dredges were stored on the ledge throughout the year, that wooden posts were set up to dry traps, and that plaintiff and his family would use the ledge to clean boats and repair lobster traps.[3] (Pl.'s Supp'g S.M.F. ¶¶ 5, 7, 10, 12, 14, 37, 43, 45, 47, 52, 53, 55.) Plaintiff asserts that such use of the ledge has been continuous from 1941 to 2014. (Pl.'s Opp'g S.M.F. ¶ 72.) Defendant Mason disputes that plaintiff and his family did anything more than store up to fifteen-to-thirty lobster traps on the highest portion of the ledge and argues that the other activities lack specificity in their location. (Def. Mason's Opp'g S.M.F. ¶¶ 45, 53, 55; Def. Mason's Reply S.M.F. ¶¶ 10, 12, 14, 27, 37, 43, 45, 47, 55). Defendant Mason also asserts that plaintiff's use of the ledge has not been continuous. (Def. Mason's Reply S.M.F. ¶¶ 41, 72; Def. Mason's Add'l S.M.F. 8).[4]

Like the maintenance of a garden and rose bushes in Weeks and Weinstein, the seasonal storage of lobster traps on the highest point of the ledge would be insufficient to put the true owner

---

[2] Defendant argues that plaintiff's family's use of the ledge prior to 1972 was not adverse because plaintiff's family had title to the ledge. (Def. Mason's Reply and Obj. to Pl.'s Mot Summ. J. at 3.) However, it appears that plaintiff's family's claim of title to the ledge would have been based on the same Rideout to Blackwell deed that conveyed title only to the highwater mark. (Def. Mason's Supp'g S.M.F. ¶ 3.) Accordingly, plaintiff's family would not have had title to the ledge for the same reasons that defendant Mason does not.

[3] With the exception of the lobster traps and wooden platform, plaintiff does not specify where precisely on the ledge these other activities occurred. (Pl.'s Supp'g S.M.F. ¶¶ 5, 7, 10, 12, 14, 38, 45, 47, 53, 55.)

[4] Specifically, defendant claims that her predecessor in interest did not observe plaintiff using the ledge until 1985 and that she herself did not observe plaintiff placing equipment on the ledge until just prior to the commencement of this lawsuit. (Def. Mason's Add'l S.M.F. ¶¶ 5, 8.)

10

of the disputed portion of the ledge on notice that their neighbor claimed title to the land. This is particularly true given Maine's tradition of public access to the sea for fishing purposes, a purpose for which lobster traps are aptly suited. See Bell, 557 A.2d at 173; Weeks, 2008 ME 120, ¶ 15, 955 A.2d 234. Additionally, there is no indication that the plaintiff posted the property, which an owner storing valuable commercial fishing equipment on a barren ledge might do. See Falvo v. Pejepscot Indus. Park, 1997 ME 66, ¶ 11, 691 A.2d 1240. ¶ 8 (affirming the Trial Courts conclusion that the "plaintiffs would have had to have 'done something unusual' to supply the requisite notice [of antagonistic intent], such as posting the land, building a fence, or giving written notice"); Gay v. Dube, 2012 ME 30, ¶¶ 14-15, 39 A.3d 52 (noting that the claimant had posted no trespassing signs on the property). Accordingly, if the trier of fact found that nothing more than lobster traps were stored on the disputed portion of the ledge, those facts would be insufficient to establish title by adverse possession. Similarly, plaintiff would be unable to prevail on his adverse possession claim if the trier of fact found that his use of the ledge was not continuous.

On the other hand, if plaintiff's version of the facts were found to be true and the activities were found to have continuously taken place on the disputed portion of the ledge, those facts may be sufficient to cause "a man of ordinary prudence" to believe that his neighbor was intending to establish exclusive control over the property. See Emerson, 560 A.2d at 2. In light of the above, a genuine issue of material fact exists concerning whether plaintiff has established facts sufficient to obtain title by adverse possession.

### 4. Plaintiff's Complaint Count III: Prescriptive Easement

In order to establish a prescriptive easement, a plaintiff "must prove continuous use for at least 20 years under a claim of right adverse to the owner, with his knowledge and acquiescence, or a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be

11

presumed." <u>Shadan v. Town of Skowhegan</u>, 1997 ME 187, ¶ 6, 700 A.2d 245 (quotation omitted). The showing of adversity that a claimant must make to obtain a prescriptive easement is the same showing that a claimant must make to obtain title by adverse possession. <u>See</u> <u>Androkites v. White</u>, 2010 ME 133, ¶¶ 17 n.7, 21, 10 A.3d 677 (citing <u>Jordan v. Shea</u>, 2002 ME 36, ¶ 31, 791 A.2d 116). The primary difference between a claim for adverse possession and a claim for a prescriptive easement is the element of acquiescence. <u>Id.</u> ¶ 21 n.8.

In this case, plaintiff's claim for a prescriptive easement is premised on the same activities as his claim for adverse possession. As discussed above, a genuine issue of material fact exists regarding whether plaintiff has established facts sufficient to support a finding of adversity. Accordingly, a genuine issue of material fact also exists concerning whether plaintiff has established a claim for a prescriptive easement.

### 5. Plaintiff's Complaint Count IV: Declaratory Judgment

Plaintiff does not appear to argue that he has record title to the disputed intertidal land. (Pl.'s Mem. filed 3/12/18 17.) Accordingly, based on the above discussion, a genuine issue of material fact exists regarding whether plaintiff has title.

The entry is

> Defendant and Counterclaim Plaintiff Amber Mason's Motion for Summary Judgment on Count I of Defendant and Counterclaim Plaintiff Amber Mason's Counterclaim is DENIED.
>
> Defendant and Counterclaim Plaintiff Amber Mason's Motion for Summary Judgment on Counts I, II, III and IV of Plaintiff Walter Scott Moody's Complaint is DENIED.
>
> Plaintiff Walter Scott Moody's Motion for Summary Judgment on Count I of Defendant and Counterclaim Plaintiff Amber Mason's Counterclaim is GRANTED as follows: Judgment is entered in favor of Plaintiff Walter Scott Moody and against Defendant and Counterclaim Plaintiff Amber Mason on Count I of Defendant and

12

Counterclaim Plaintiff Amber Mason's Counterclaim. Defendant Mason does not have title to the intertidal land abutting her property.

Plaintiff Walter Scott Moody's Motion for Summary Judgment on Counts I, II, III and IV of Plaintiff Walter Scott Moody's Complaint is DENIED.

Date: June 13, 2018

Nancy Mills
Justice, Superior Court

Entered on the Docket: 6. 22. 18