2004 ME 68

**GUARDIANSHIP OF JO ANN L.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 26, 2004.

Decided: May 14, 2004.

**416**

Jeffrey P. Buhrman, South Portland, for appellant.

Eric Cote, Saco, for appellee.

Panel: CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Jo Ann L. appeals from a judgment entered in the York County Probate Court (*Nadeau, J.*) appointing her mother, Monique Parenteau, as her limited guardian and conservator. Jo Ann does not contest the sufficiency of the evidence supporting that appointment, but rather challenges only the denial of her pretrial motion for a summary judgment, arguing that the court should not have allowed the case to proceed to a trial on the merits. We disagree with Jo Ann and affirm the judgment.

## I. BACKGROUND

[¶ 2] On September 23, 2002, Parenteau petitioned the Probate Court to appoint her as the guardian and conservator for her daughter, Jo Ann. In support of the petition, Parenteau submitted a physi-

cian/psychologist's report (PP–505), prepared by Dr. B.E. Woods, Jo Ann's psychiatrist at that time, and in which Dr. Woods diagnosed Jo Ann with chronic paranoid schizophrenia.

[¶ 3] On September 30, 2002, after conducting an emergency ex parte hearing, the court appointed Parenteau as temporary guardian and conservator and also appointed a visitor, Kathryn Ware. 18–A M.R.S.A. §§ 5–303(b) & (c), 5–308 (1998). On October 10, 2002, Ware filed her first report, which stated that Jo Ann contested the appointment of a guardian and conservator. Ware filed her second report with the court on November 18, 2002, which repeated Jo Ann's desire to manage her own affairs and recommended that a guardian not be appointed at that time.

[¶ 4] On November 20, 2002, the court held an expedited hearing concerning the temporary appointments. Margaret Paine, a social worker, Parenteau, and two of Jo Ann's sisters, testified at the hearing about Jo Ann's inability to properly care for herself, about her inability to budget her money, how her apartment is always in a deplorable state, and how Jo Ann is unable to engage in proper hygiene and eating habits. Jo Ann's sisters testified that the appointment of a guardian for Jo Ann was "crucial" and that they did not believe that Jo Ann had the capacity to care for herself.

[¶ 5] After the hearing, the court renewed Parenteau's temporary appointment as guardian and conservator, but did limit her guardianship powers.

[¶ 6] On May 8, 2003, Jo Ann filed a motion for a summary judgment, relying, in part, on the fact that Parenteau had not designated an expert witness for the final hearing on the petition for guardianship and conservatorship, and contending that Parenteau would be unable to establish

mental incapacity. Jo Ann also argued that Parenteau had not properly supported her M.R. Civ. P. 56 responses to Jo Ann's statement of material facts with proper citations to the record. The court denied Jo Ann's summary judgment motion. On May 28, 2003, Jo Ann moved in limine to exclude Dr. Woods's report as hearsay and because it had yet to be authenticated. The court granted Jo Ann's motion in limine "as to limitations on the testimony of lay witnesses except as permitted under Evidence Rule 701," but denied the motion "in all other respects."

[¶ 7] At the final hearing, Parenteau and Jo Ann's sisters reiterated their prior testimony, and Dr. Carolyn Voss, Jo Ann's expert medical witness, testified.[1] Parenteau testified that on her recent visits to Jo Ann's apartment, she found the apartment "filthy" and in "chaos." In addition to reiterating her testimony from previous hearings, one sister testified that Jo Ann "is in denial of her mental health ... [and] has stated that her purpose in taking medication is solely to gain her guardianship back because she does not need to take it." The sister testified that Jo Ann continues to experience difficulty in managing her financial affairs and "buys in excess." Another sister testified that Jo Ann's apartment is a "dump," that Jo Ann does not clean her apartment or lock the doors. She testified that Jo Ann is doing better, but only because of the court order.

[¶ 8] Dr. Voss testified that after examining Jo Ann, she determined that Jo Ann's "emotional controls are a little fragile," that Jo Ann "really does not believe she has an illness," and she is unable to acknowledge the severity of her mental health problems. Although Jo Ann was taking her medications at the time, she told Dr. Voss that she was not sure she needed to take them and took her medi-

cation only because of the guardianship proceedings. Dr. Voss diagnosed Jo Ann as schizophrenic. Dr. Voss went on to testify that Jo Ann lacks sufficient capacity to make responsible decisions for herself without external controls. In addition, Dr. Voss testified that she has "a high level of confidence" that if Jo Ann does not take her medication, she will most likely return to a mental health facility.

[¶ 9] After trial, the court granted Parenteau a limited guardianship and conservatorship. Jo Ann filed this appeal, challenging only the court's order denying her motion for a summary judgment.

## II. DISCUSSION

[¶ 10] In contending that the court improperly denied her motion for a summary judgment, Jo Ann contends that Parenteau failed to designate an expert witness to testify at the final hearing and that she did not properly support her responses to Jo Ann's statement of material facts with record citations. Jo Ann also argues that the court improperly based its decision to deny a summary judgment on the report prepared by Dr. Woods, which Jo Ann argues is inadmissible hearsay.

[¶ 11] Summary judgment procedure is an appropriate practice encouraged in most litigated cases in order to effectuate policies of judicial economy. *See Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21–22 (stating that summary judgment "is simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding"); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of

---

1. Neither Dr. Woods nor Paine testified.

the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.") (quotation marks omitted). Cases in the Probate Court are subject to the summary judgment procedure outlined in M.R. Civ. P. 56. M.R. Prob. P. 56.

■ [¶ 12] There are certain types of cases, however, that do not lend themselves to the use of a summary judgment. These cases include petitions for the appointment of a guardian or conservator and child protective proceedings. Involved in these proceedings are issues of the substantial curtailment of individual rights or interference with personal autonomy which, at least in most cases, can be resolved and decided only through fact-finding. In most instances, it is the better practice to allow such cases to proceed to trial on the merits, as the Probate Court did in this case.

[¶ 13] The strength of the evidence presented at the final hearing and relied on by the Probate Court when it appointed Parenteau as limited guardian and conservator, demonstrates that this case was properly decided after a hearing. Jo Ann's family members gave compelling testimony of Jo Ann's inability to care for herself. Jo Ann's own expert witness, Dr. Voss, concluded that Jo Ann suffers from mental disease and lacks sufficient capacity to make responsible decisions for herself without external controls, and that she is likely to return to a mental health institution should she fail to take her medication. The court made factual findings based on the testimony of witnesses and other evidence going to the capacity of Jo Ann. The findings are well supported by the evidence.[2]

■ [¶ 14] Moreover, Jo Ann's contention that she should have been granted a summary judgment because Parenteau failed to designate an expert witness to testify concerning Jo Ann's mental incapacity is without merit. Title 18–A M.R.S.A. § 5–303 (1998)[3] does not explicitly require that an expert witness testify to establish mental incapacity. The comprehensive testimony of Parenteau, Jo Ann's sisters, and Dr. Voss, show that Jo Ann's mental incapacity was clearly established. The Probate Court's denial of the motion for a summary judgment was in the best interest of Jo Ann, and did not constitute legal error.

The entry is:

Judgment affirmed.

---

2. The testimony of Dr. Voss is strongly supportive of the decision of the Probate Court. Any reliance on the report of Dr. Woods would therefore be harmless.

3. Section 5–303(c) provides, in part:
   The person alleged to be incapacitated is entitled to be present at the hearing in person, to see and hear all evidence bearing on the person's condition. The person alleged to be incapacitated is entitled to be represented by counsel, to present evidence, to cross-examine witnesses, including the physician, the visitor and the guardian ad litem.
   18–A M.R.S.A. § 5–303(c).