2010 ME 120

**Merilyn A. DALTON et al.**

**v.**

**Reed D. QUINN et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 21, 2010.

Decided: Nov. 23, 2010.

John P. Flynn, III, Daniel G. Lilley Law Offices, P.A., Portland, ME, for Merilyn Dalton.

Mark G. Lavoie, Esq., Christopher C. Taintor, Esq., Jennifer A.W. Rush, Esq., Norman, Hanson & DeTroy, LLC, Portland, ME, for Reed Quinn and Maine Heart Surgical Associates.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1] Merilyn A. Dalton, individually and as personal representative of the Estate of Kevin S. Dalton (collectively Dalton), appeals from a summary judgment entered in the Superior Court (Cumberland County, *Warren, J.*) in favor of Reed D. Quinn, M.D., Maine Heart Surgical Associates, and Maine Medical Center (collectively Quinn) on Dalton's complaint for negligence, wrongful death, bystander liability, and vicarious liability. Dalton argues that the court erred in denying her request for an enlargement of time to designate an expert witness.[1] Contrary to Dalton's contentions, the court did not abuse its discretion in denying her request, and we affirm the judgment.

## I.  BACKGROUND

[¶ 2] Kevin S. Dalton died on April 3, 2004, four days after undergoing a robotically-assisted surgery to repair his mitral heart valve. On June 9, 2008, Kevin's family—Merilyn A. Dalton, his widow, individually and on behalf of both the Estate of Kevin S. Dalton and their two minor children, as well as Kevin's parents, Diane and Robert Dalton—instituted proceedings[2] in the Superior Court against Kevin's health care providers in connection with Kevin's death.[3] In the complaint, they asserted claims for negligence, wrongful death, and bystander liability against Dr. Reed Quinn, Maine Heart Surgical Associates, Maine Medical Center, Dr. Paul Sweeney, and Cardiovascular Consultants of Maine, and claims for vicarious liability against Maine Heart Surgical Associates, Maine Medical Center, and Cardiovascular Consultants of Maine.[4]

[¶ 3] The trial court's initial scheduling order was entered on September 19, 2008,

---

1. In addition to this argument, Dalton also contends that the court erred by (1) ordering Dalton to disclose communications with her former expert witness; (2) excluding the deposition of Dalton's former expert witness; and (3) finding that Quinn was denied permissible discovery. We find these arguments unpersuasive and do not address them further.

2. As required by the Maine Health Security Act, *see* 24 M.R.S. §§ 2851–2859 (2009), the Daltons' claims had already been reviewed by a preliminary pretrial screening panel.

3. It is unclear whether Dalton, on behalf of the minor children, and Kevin's parents are appealing the entry of summary judgment. The notice of appeal states: "NOW COMES the Plaintiff, Merilyn Dalton, and submits this Notice of Appeal." Similarly, Dalton's brief only discusses Merilyn Dalton, individually and as personal representative of the Estate, as an appellant. Thus, we presume that only Merilyn Dalton, individually and as personal representative of the Estate, is an appellant.

4. The court granted a summary judgment in favor of Sweeney and Cardiovascular Consultants; Dalton is not challenging that entry of summary judgment on appeal.

and it provided: "No extensions of the designation deadlines will be granted except on motion demonstrating good cause and that discovery was timely and diligently conducted in good faith." In accordance with the scheduling order, the Daltons timely designated Richard Freeman, M.D., as their expert witness on December 19, 2008.[5] At the time of that designation, however, the Daltons had already been aware for more than four months that Freeman had reservations about testifying. During the next six months, the parties had multiple discovery disputes about what information Freeman should be required to provide concerning his experience and expertise in the area of robotically-assisted mitral valve surgery. Freeman formally withdrew as the Daltons' expert in early June of 2009, and, on June 10, 2009, the Daltons requested, pursuant to M.R. Civ. P. 6(b),[6] that the deadline to designate their expert witnesses be extended to September 30, 2009. At the July hearing on their request, the Daltons' counsel stated that he needed "another couple of months" to find an expert, and that even after that, he "may come up dry." In August of 2009, the court, without providing a definitive ruling, stated: "If any extension is ultimately granted, [the Daltons] should anticipate that it would be very unlikely that such an extension would be granted beyond September 14, 2009."

[¶ 4] The Daltons were unable to secure an expert witness by September 14, 2009, and on September 15, 2009, they sought a second enlargement of time to designate an expert witness. The court denied the Daltons' request in October of 2009, finding that there was no good cause for a further extension. The court reasoned that, although the Daltons knew at least as early as April 2009 that Freeman wanted to withdraw, they "then devoted considerable time and effort to an unsuccessful effort to persuade the court that the discovery sought from Dr. Freeman constituted 'harassment' and did so without initially disclosing that Dr. Freeman had at various time[s] given additional reasons for his desire to withdraw." The court also stated that the Daltons had had "more than 120 days after Dr. Freeman's withdrawal in which to find a new expert," and refused to allow the case to "remain in a state of suspended animation" while the Daltons sought "extension after extension."

[¶ 5] Quinn subsequently filed a motion for summary judgment on the ground that the Daltons' claims were unsupported by expert testimony. Following a hearing, the court granted Quinn's motion for summary judgment on February 8, 2010, and this appeal followed.

## II. DISCUSSION

[¶ 6] Dalton challenges the court's denial of the second request for an enlargement of time to designate an expert witness. The trial court's decision on

---

5. The Daltons had previously designated Dr. Freeman as their expert witness on November 30, 2007, for the prelitigation screening panel.

6. Maine Rule of Civil Procedure 6(b) provides, in part:

When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

whether to grant or deny a motion for an enlargement of time is reviewed for abuse of discretion. *See Johnson v. Carleton,* 2001 ME 12, ¶ 10, 765 A.2d 571, 574. The trial court's ruling is entitled to "considerable deference because of its superior position to evaluate the credibility and good faith of the parties before it." *Gregory v. City of Calais,* 2001 ME 82, ¶ 9, 771 A.2d 383, 386.

[¶ 7] Maine Rule of Civil Procedure 6(b) provides that the court may, in its discretion, enlarge the time within which an act is required or allowed to be done "for cause shown." When a request for an enlargement of time is made after the time permitted, however, the court may grant the request only "where the failure to act was the result of excusable neglect."[7] M.R. Civ. P. 6(b); *see Johnson,* 2001 ME 12, ¶ 7, 765 A.2d at 574.

[¶ 8] Here, the court expressly found that there was no good cause for a further extension, and there is sufficient evidence in the record to support this finding. *See Key Equip. Fin., Inc. v. Hawkins,* 2009 ME 117, ¶ 17, 985 A.2d 1139, 1144. Dalton was aware in April of 2009 that Freeman wanted to withdraw, in part because of perceived harassment, but also because of reasons unrelated to Quinn's discovery efforts. Despite this knowledge, Dalton persevered in arguing about Quinn's discovery efforts relating to Freeman's qualifications, rather than attempting to obtain a new expert. In addition, even after Freeman formally withdrew, Dalton still had more than 120 days to locate an expert witness. She failed to designate an expert witness before the presumed deadline of September 14, 2009, and failed to move,

pursuant to Rule 6(b), to enlarge the time within which to do so before that date. Accordingly, the court did not abuse its discretion in denying Dalton's second request for an enlargement of time to designate an expert witness.

The entry is:

Judgment affirmed.

---

7. The trial court did not address, and Dalton did not raise, the issue of whether Dalton's failure to act constituted "excusable neglect." Instead, Dalton contends that the court's failure to grant her request should be analyzed as a sanction for a discovery violation. The trial court, however, did not deny Dalton's request as a discovery sanction; it found no good cause to grant such an enlargement.