MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2016 ME 167
Docket:      Lin-15-274
Argued:      March 3, 2016
Decided:     November 17, 2016

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

JAMES N. LEVIS

v.

GUSTAV KONITZKY et al.

HUMPHREY, J.

[¶1] James N. Levis appeals from a summary judgment entered in the District Court (Wiscasset, *Billings, J.*) in favor of Gustav Konitzky in this adverse possession and quiet title action. Levis asserts several errors and abuses of discretion by the trial court over the course of the six years that this litigation was pending, including, inter alia, that the court abused its discretion in vacating a default judgment entered against unknown defendants[1] and erred in granting summary judgment to Konitzky.[2] We conclude that none of the court's rulings constitutes abuse of discretion or legal error. Accordingly, we affirm the judgment.

---

[1] Alleged heirs of the deceased owner of record of the property in question were identified as the litigation progressed.

[2] Konitzky was first named a party in interest but became a defendant after heirs of the deceased owner of record conveyed their interest in the property to him.

## I. BACKGROUND

[¶2]  On April 27, 2009, James Levis filed a complaint for declaratory judgment and quiet title in the District Court (Wiscasset), claiming title to an approximately 125-foot by 100-foot section of mudflat on the southern side of McCaffrey's Brook in Bristol by adverse possession and by deed from his ex-wife.[3]  Levis named "J. Henry Cartland, his heirs and assigns" (the Cartland heirs) as defendants and Gustav Konitzky, an abutting neighbor and boat-builder, as a party in interest.[4]

[¶3] Cartland, who acquired title to the mudflat and an adjoining lot on January 1, 1890, was the last known owner of record.  The Cartland heirs were served by publication, and, on October 16, 2009, Levis filed a motion for a default and default judgment as to the Cartland heirs because none had appeared in the case.  The court (*Worth, J.*) entered a default judgment against

---

[3]  In 2008, Levis's ex-wife, Sheila Howard, pursuant to their divorce, gave Levis a quitclaim deed conveying any interest she had in the shores and flats of McCaffrey's Creek, as they were described in the deed to J. Henry Cartland, who had acquired title to the mudflat in the late 1800s. Levis admits, however, that there were no record conveyances of the mudflat from J. Henry Cartland to Howard or to anyone else.

[4]  Levis named Konitzky as a party in interest because Konitzky had been granted permission to repair and reactivate a marine railway by order of the Department of Environmental Protection in 1983, which, Levis noted in his complaint, may or may not affect the disputed parcel of land.  Levis's primary motivation for filing the action appears to be his desire to prevent Konitzky from using the portion of the mudflat in front of Levis's summer residence.

the heirs on October 28, 2009. The order specifically stated that it did not affect Konitzky's rights.

[¶4] For the next several years, Levis and Konitzky engaged in a procedural entanglement of dueling motions, with Levis attempting to establish that Konitzky had no cognizable interest in the mudflat and Konitzky attempting to defeat Levis's quiet title and adverse possession claims. Relevant to this appeal, in December 2010, Konitzky filed a motion to set aside the default judgment against the Cartland heirs, alleging that he had located a Cartland heir who had transferred her interest in the property to Konitzky. In February 2011, the court (*Tucker, J.*) held a hearing and denied the motion because it was not filed within the one-year deadline specified in M.R. Civ. P. 60(b)(2) and because Konitzky had "not presented evidence of reasons that Rule 60(b)(6) should apply."

[¶5] Pursuant to M.R. Civ. P. 59(e), Konitzky filed a motion for reconsideration of the denial of his motion to set aside the default judgment, contending that he had not received notice of the hearing and that because the default judgment was not final—it had not settled the matter as to him—the court's application of M.R. Civ. P. 60(b) was in error.

[¶6]  The court granted Konitzky's motion and, in June 2011, held an evidentiary hearing at which Konitzky presented a 2010 release deed from Margaret Sue Tennant Jones, an alleged heir of Cartland, conveying any interest she had in the property to him.  The court entered an order vacating the default judgment, opining that Konitzky's discovery of an heir and the subsequent assignment could make him an assignee, not just a party in interest.  The court concluded that the default judgment was not a final judgment because the entire case had not been resolved, *see* M.R. Civ. P. 54(b)(1); thus, Rule 60(b)(2) and its one-year deadline for newly discovered evidence did not apply.  *See* M.R. Civ. P. 55(c).

[¶7]  Citing the quiet title statute, 14 M.R.S. §§ 6651-6663 (2015), Levis filed a motion to modify the order vacating the default judgment.  The court denied the motion but noted that none of the Cartland heirs had filed an answer or otherwise appeared in the action, and Konitzky had not entered an appearance pursuant to 14 M.R.S. § 6653 as an assignee of a named defendant, and it extended the time for formally answering the original complaint until September 2, 2011.  *See* 14 M.R.S. §§ 6654, 6656.  By a subsequent order dated August 31, 2011, the court extended the deadline "for a thirty-day period."

[¶8]   On September 29, 2011, Konitzky entered an appearance, pursuant to 14 M.R.S. § 6653, as a defendant to the original action based on the conveyance from Tennant as well as conveyances from additional alleged heirs.  In November 2011, Levis filed several motions, including a motion for default against Konitzky as a party in interest and defendant, contending that Konitzky failed to comply with several rules of civil procedure and abide by court timelines.  The court held a hearing on Levis's motions and denied them all.

[¶9]  Discovery continued between the parties, and in December 2013, Konitzky filed a request for leave to file a motion for summary judgment pursuant to M.R. Civ. P. 56(b).  The court (*Billings, J.*) granted the request three days later.  Levis filed a motion for reconsideration, arguing that (1) Konitzky had waived any right to argue that summary judgment in his favor was warranted, (2) the court had granted Konitzky's request four days before Levis had received a copy of it, and (3) a motion for summary judgment would delay trial.  The court did not address Levis's motion.  Two weeks later, Konitzky filed a motion for summary judgment, which Levis opposed with both argument and opposing statements of material fact.  After considering all of the filings on the motion for summary judgment, the court determined that

6

none of the facts disputed by the parties was material to the legal issue presented by Levis's complaint and granted the motion in an order entered on March 12, 2014.

[¶10]  Levis both appealed to us and filed motions for findings of fact and for reconsideration in the trial court.  We dismissed the appeal as interlocutory, concluding that the order was not a final judgment, *see* M.R. Civ. P. 54(b)(1), because it did not adjudicate Levis's pending claim against the Cartland heirs.  On January 22, 2015, Levis filed, among other things, his third motion for default judgment against all heirs, assigns, or grantees of Cartland "who have failed to file an appearance and Answer in this action," contending that, other than Konitzky identifying himself as a defendant, no other heir or assign had ever filed an answer or entered an appearance.

[¶11]  In May 2015, the court denied Levis's motion, stating that because the Cartland heirs "did appear and defend in the case through Konitzky" as an assignee of Cartland's interest, default judgment was not warranted; and because all claims had been adjudicated, the summary judgment was a final judgment.  The court also stated that the summary judgment in Konitzky's favor did not establish title to the mudflat—it simply established that, in light of uncontroverted facts relating to Konitzky's regular

use of the mudflat, Levis could not meet the prima facie elements of his adverse possession or quiet title actions. Levis timely appealed.

## II. DISCUSSION

[¶12] Levis presents five issues for our review. He contends that the court erred or abused its discretion by (1) setting aside the default judgment entered against the Cartland heirs in October 2009; (2) denying his November 2011 motion for default against Konitzky after Konitzky allegedly failed to comply with a court order and the rules of civil procedure; (3) granting leave for Konitzky to file a motion for summary judgment in December 2013; (4) granting summary judgment in favor of Konitzky in March 2014; and (5) denying his motion for default in May 2015. Finding no abuse of discretion in the court's actions in setting aside the default judgment or denying Levis's motion for default, we do not discuss those issues further. We address in turn the court's actions in allowing Konitzky to file a motion for summary judgment in December 2013, granting summary judgment in favor of Konitzky in March 2014, and denying Levis's motion for default in May 2015.

8

A.    Leave to File Motion for Summary Judgment

[¶13]  Levis argues that the court abused its discretion when it granted Koniztky leave to file a motion for summary judgment, where Konitzky's request was made years after the deadline stated in the initial scheduling order and where the court granted the request before Levis had an opportunity to respond.  He argues that pursuant to M.R. Civ. P. 6(b), the court could not grant Konitzky's request absent a showing of excusable neglect. Because the trial court was "best positioned to evaluate the circumstances of the case," *Johnson v. Carleton*, 2001 ME 12, ¶ 10, 765 A.2d 571, we review its decision to allow Konitzky to file his summary judgment motion for an abuse of discretion, *id.*; *see Dalton v. Quinn*, 2010 ME 120, ¶ 6, 8 A.3d 670.

[¶14]  Maine Rule of Civil Procedure 6(b) provides, in pertinent part:

When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect . . . .

We have applied Rule 6(b)'s "excusable neglect" standard in a number of cases in which we examined a trial court's decision to grant or deny a party's request to file a motion or pleading after the deadline for such filing had

passed. None of these cases involved a motion for leave to file a dispositive motion such as a motion for summary judgment.[5]

---

[5] Several involved untimely expert witness designations. *See, e.g.*, *Hutz v. Alden*, 2011 ME 27, ¶¶ 19-22, 12 A.3d 1174 (holding that the trial court did not abuse its discretion when it denied a motion to enlarge the time to designate an expert witness after the deadline had passed, because the moving party had not demonstrated excusable neglect pursuant to M.R. Civ. P. 6(b)); *Dalton v. Quinn*, 2010 ME 120, ¶¶ 6-8, 8 A.3d 670 (same); *Johnson v. Carleton*, 2001 ME 12, ¶¶ 7-10, 765 A.2d 571 (same); *but see Estate of O'Brien-Hamel*, 2014 ME 75, ¶¶ 22-24, 93 A.3d 689 (holding that even absent a showing of excusable neglect, the trial court did not abuse its discretion in allowing a late-designated expert witness to testify where the opposing party was not "unfairly surprised" by the expert's testimony (quotation marks omitted)).

In other cases, a party moved for leave to file a late answer or counterclaim. *See Dyer Goodall & Federle, LLC v. Proctor*, 2007 ME 145, ¶¶ 17-22, 935 A.2d 1123 (holding that the trial court did not abuse its discretion when it denied a motion to enlarge the time to answer a complaint after the deadline had passed, because the moving party had not shown excusable neglect pursuant to M.R. Civ. P. 6(b)); *Solomon's Rock Trust v. Davis*, 675 A.2d 506, 508-09 (Me. 1996) (holding that the trial court did not abuse its discretion in *granting* a motion for enlargement of time to file an answer and noting that "M.R. Civ. P. 6(b) should be liberally applied to work substantial justice"); *Rodriguez v. Tomes*, 610 A.2d 262, 264-65 (Me. 1992) (same); *but see Estate of Leavitt*, 1999 ME 102, ¶¶ 3-7, 733 A.2d 348 (vacating the trial court's grant of a motion for extended time to file an answer and counterclaim because the counterclaim was time-barred pursuant to the Probate Code).

We have also applied the standard to motions to file various other late nondispositive filings, including pleadings filed in opposition to motions for summary judgment. *See, e.g.*, *Gregory v. City of Calais*, 2001 ME 82, ¶¶ 5-11, 771 A.2d 383 (motion for leave to file late motion for award of attorney fees); *Mancini v. Scott*, 2000 ME 19, ¶¶ 7-8, 744 A.2d 1057 (motion for leave to file a late motion to substitute parties); *Sevigny v. City of Biddeford*, 344 A.2d 34, 38 (Me. 1975) (motion for enlargement of time within which to file a Rule 80B complaint). In *Camden National Bank v. Peterson*, the trial court granted a late-filed motion to enlarge time to oppose a motion for summary judgment. 2008 ME 85, ¶¶ 15, 17, 948 A.2d 1251. The moving party gave no reason for its delay, the court did not make findings regarding excusable neglect, and the nonmoving party did not ask for such findings. *Id.* ¶ 18. We noted that Rule 6(b)'s excusable neglect standard applied, that the delay caused by the motion was brief, and that the court had already granted several motions for enlargements by the *nonmoving* party. *Id.* ¶¶ 16, 18. We concluded that "[i]n the absence of a record demonstrating any other facts that formed the basis of the court's ruling, we assume that the court acted within its discretion in granting the motion to enlarge." *Id.* ¶ 19.

Several federal courts, on the other hand, have applied the excusable neglect standard to late-filed summary judgment motions. The Federal Rules of Civil Procedure provide that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b). According to the United States Supreme Court, Fed. R. Civ. P. 6(b)

10

[¶15]  The Maine Rules of Civil Procedure "shall be construed to secure the just, speedy and inexpensive determination of every action."  M.R. Civ. P. 1; *see Merrifield v. Hadlock*, 2009 ME 1, ¶ 6, 961 A.2d 1107 ("[T]he overall purpose of the Rules of Civil Procedure . . . is to ensure the speedy and inexpensive resolution of a case.").  Consistent with these purposes, the summary judgment process is a procedural mechanism for determining

_____

authorizes a trial court to exercise its discretion to permit a late-filed motion "only where[, inter alia,] the failure to meet the deadline was the result of excusable neglect."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 895-97 (1990) (quotation marks omitted).  In *Lujan*, the Supreme Court upheld the trial court's decision to reject affidavits supporting an opposition to a motion for summary judgment where the affidavits were filed after the court held the hearing on the motion for summary judgment.  *Id.* at 894-95.

Since *Lujan* was decided, federal trial and appellate courts have expressly applied Fed. R. Civ. P. 6(b)'s excusable neglect standard to requests to file late motions for summary judgment. *See Drippe v. Tobelinski*, 604 F.3d 778, 784-85 (3d Cir. 2010) (considering an untimely motion for summary judgment, made orally on the eve of trial eight months after the court's deadline for summary judgment motions had passed, and holding, based on *Lujan* and Fed. R. Civ. P. 6(b), that "the district court must make a finding of excusable neglect . . . before permitting an untimely motion"); *Yeoman v. Ikea U.S.A. W., Inc.*, No. 11cv701-WQH (BGS), 2014 U.S. Dist. LEXIS 37749 , at *8-22 (S.D. Ca. Mar. 20, 2014) (denying a late motion to amend the court's scheduling order in order to file a motion for summary judgment, on the ground that the movant did not meet Fed. R. Civ. P. 6(b)'s excusable neglect standard); *Walker v. Durham*, No. 5:12-CT-3186-BO, 2014 U.S. Dist. LEXIS 133484, at *10-11 (E.D.N.C. Sept. 22, 2014) (allowing a late-filed motion for summary judgment on the ground that the movant had met Fed. R. Civ. P. 6(b)'s excusable neglect standard); *Sewell v. Lincoln Life & Annuity Co.*, No. 11 Civ. 4236 (ALC), 2013 U.S. Dist. LEXIS 40538, at *3-8 (S.D.N.Y. Mar. 22, 2013) (upholding a magistrate judge's decision to allow a late-filed motion for summary judgment on the ground that the movant had met Fed. R. Civ. P. 6(b)'s excusable neglect standard).

These decisions, however, are grounded in the language of Fed. R. Civ. P. 56(b): "*Unless a different time is set by local rule or the court orders otherwise*, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."  (Emphasis added.)  By issuing a scheduling order, the court has "order[ed] otherwise," and so Fed R. Civ. P. 6(b)'s requirements—including the excusable neglect requirement, *see Lujan*, 497 U.S. at 896—apply when a party has missed the deadline stated in the scheduling order.  Maine's Rule 56 does not contain the same language.  Rather, it provides: "A party against whom a claim . . . is asserted . . . *may, at any time, but within such time as not to delay the trial*, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."  M.R. Civ. P. 56(b) (emphasis added).

whether a trial is needed, and can obviate the need for the parties and the court to proceed to trial. *See* M.R. Civ. P. 56(c); *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18; *Rancourt v. Waterville Osteopathic Hosp.*, 526 A.2d 1385, 1387-88 (Me. 1987); *see also Guardianship of Jo Ann L.*, 2004 ME 68, ¶ 11, 847 A.2d 415 ("Summary judgment procedure is an appropriate practice encouraged in most litigated cases in order to effectuate policies of judicial economy.").

[¶16]  Although Rule 6(b) provides the general rule for nondispositive pleadings and motions, the rule specific to summary judgment itself provides as follows:

> A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, *at any time, but within such time as not to delay the trial,* move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

M.R. Civ. P. 56(b) (emphasis added).  "The primary purpose of [Rule 56's] outermost time limit is to prevent delaying tactics."  3 Harvey & Merritt, *Maine Civil Practice* § 56:4 at 231 (3d ed. 2015-2016).  Where a scheduling order imposes a deadline, "better practice suggests filing a motion for leave to file a late motion for summary judgment if new grounds develop late in the case justifying the motion."  Maine State Bar Association, *The Maine Rules of Civil*

*Procedure with Advisory Committee Notes and Practice Commentary* § 56 (2008). A trial court's decision on whether to grant leave to file a late motion, i.e., whether to grant a motion for an enlargement of time, "is entitled to considerable deference because of [the court's] superior position to evaluate the credibility and good faith of the parties before it." *Dalton*, 2010 ME 120, ¶ 6, 8 A.3d 670 (quotation marks omitted).

[¶17] We now clarify that, contrary to Levis's contention, the trial court has discretion to allow a late-filed motion for summary judgment, even absent a showing of excusable neglect, if the request is made "within such time as not to delay the trial," M.R. Civ. P. 56(b). *See Carter v. Bangor Hydro-Elec. Co.*, 598 A.2d 739, 741 (Me. 1991); *Rancourt*, 526 A.2d at 1387-88. The trial court should consider whether the motion is interposed for the purpose of delay, and whether granting leave to file the motion will promote effective case management or result in undue costs to the parties or prejudice to the nonmoving party.

[¶18] In this case, the initial scheduling order, generated in October 2009, provided for a discovery deadline of mid-January 2010 and a deadline for summary judgment motions of mid-February 2010. Konitzky filed his motion for leave to file a summary judgment motion in late

December 2013. During the years in between, both parties engaged in a convoluted procedural entanglement involving, inter alia, the following: in February 2011—after the deadline for filing motions had passed—Levis filed a motion for summary judgment, which was later denied; in August 2011, the court extended the deadline for defendants to answer the original complaint until September 2011, and then again extended that deadline for thirty more days; in September 2011, Konitzky entered a first appearance as a defendant in the case; in November 2011, Levis filed a motion for default against Konitzky; and in 2012, the parties finally engaged in discovery in earnest, designating expert witnesses and serving interrogatories. When Konitzky filed his request for leave to file a motion for summary judgment in December 2013, the case had been placed on a trailing trial list for January 16, 2014, but it was not reached on that date and was rescheduled for April 11, 2014. The court granted Konitzky's motion for summary judgment by order entered March 12, 2014.

[¶19] This much is clear: throughout the proceedings, neither the parties nor the court adhered to the scheduling order. Levis himself filed a motion for summary judgment after the motion deadline. Although it would have been better practice for the court to issue a new scheduling order

reflecting the actual progress of the action, and to grant Levis an opportunity to respond to Konitzky's request, on this record, the court's actions did not exceed the bounds of its discretion. With discovery extending two years past the original deadline, the potential for late-filed dispositive motions was obvious. Had the court determined that the timing of Konitzky's motion for summary judgment would delay trial, add unnecessary costs, or prejudice Levis in some way, it had the discretion to deny the motion. However, the summary judgment process did not delay trial, and Levis does not demonstrate how he was prejudiced by the court's decision to allow the motion. To the contrary, the record reflects that the court had before it Levis's timely-filed opposition to Konitzky's motion for summary judgment when, viewing the evidence in the light most favorable to Levis as required, *see Nader v. Me. Democratic Party*, 2012 ME 57, ¶ 30, 41 A.3d 551, it determined that Konitzky was entitled to a judgment as a matter of law. Under these circumstances, we cannot conclude that the court exceeded the bounds of its discretion when it decided, in December 2013, to allow Konitzky to file his motion for summary judgment.

B.     Grant of Summary Judgment to Konitzky

[¶20]  Levis next argues that the court erred when it entered a summary judgment in favor of Konitzky on Levis's claim of title to the disputed area of the mudflat.  "We review the grant of a motion for summary judgment de novo, and consider both the evidence and any reasonable inferences that the evidence produces in the light most favorable to the party against whom the summary judgment has been granted in order to determine if there is a genuine issue of material fact."  *Budge v. Town of Millinocket*, 2012 ME 122, ¶ 12, 55 A.3d 484 (quotation marks omitted).  "When the defendant is the moving party, he must establish that there is no genuine dispute of fact and that the undisputed facts would entitle him to judgment as a matter of law." *Estate of Cabatit v. Canders*, 2014 ME 133, ¶ 8, 105 A.3d 439.  "It then becomes the plaintiff's burden to make out the prima facie case and demonstrate that there are disputed facts" regarding issues material to the applicable law.  *Id.; see also Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 9, 742 A.2d 933.

1.     Adverse Possession

[¶21]   On Konitzky's motion for summary judgment, Levis had the burden to make out a prima facie case for adverse possession.  To establish title through adverse possession, a party must prove by a preponderance of

the evidence that the party's use and possession of the subject property was (1) actual, (2) open, (3) visible, (4) notorious, (5) hostile, (6) under claim of right, (7) continuous, (8) exclusive, and (9) of a duration of at least twenty years. *Dombkowski v. Ferland*, 2006 ME 24, ¶ 10, 893 A.2d 599.

[¶22] At the outset, we recognize the long-standing doctrine in Maine that the intertidal zone, or wet sand area, is subject to a public easement for fishing, fowling, and navigation. *See Bell v. Town of Wells*, 557 A.2d 168, 173 (Me. 1989). Despite this recognized public easement, Levis nonetheless argues that, by "using" the mudflats in front of his upland property for clamming and tying boats, he has acquired title through adverse possession to the intertidal zone. As a matter of law, this use—even if it had not been interrupted by Konizky's use of the same area for clamming and boating—is not sufficient to establish title through adverse possession.

2. Claim of Title Under Deed

[¶23] Levis also claims that he acquired title to the mudflat through a 2008 quitclaim deed from his ex-wife. Although the ex-wife's quitclaim deed purports to convey the mudflat by listing its metes and bounds, Levis admits that there were no record conveyances to his ex-wife from the last owner of record, Cartland. Levis asserts that his ex-wife acquired title by adverse

possession herself; however, he did not provide sufficient documentation or evidence, or any specific allegations, to support this contention, such as a record title in the registry of deeds or some indicia that she sought to quiet title through the courts. In addition, his ex-wife's theoretical claim of adverse possession suffers from the same infirmity as his: the asserted use of the intertidal zone is insufficient to meet the necessary elements for adverse possession. Therefore, Levis did not set forth specific facts establishing a genuine issue for trial that he is the owner of the mudflat by virtue of deed. *Cf. Dionne v. LeClerc*, 2006 ME 34, ¶ 11, 896 A.2d 923 (concluding that a break in chain of title, which had been transferred to the town by operation of law due to unpaid taxes, was cured by a subsequent quitclaim deed from the town to the plaintiff).

3. Quiet Title

[¶24] Levis also contends that the court erred by entering a summary judgment in Konitzky's favor on his quiet title action because he has alleged a prima facie claim of title to the disputed mudflat against the true owners. The quiet title statue provides that a person may bring a quiet title action if he or she has been in uninterrupted, i.e. continuous and exclusive, possession for the four years preceding the commencement of the action. 14 M.R.S. § 6651;

*see Chickering v. Yates*, 420 A.2d 1219, 1223 (Me. 1980). Levis filed his complaint in 2009. He admitted in his statement of material facts that Konitzky had made use of the mudflat since 2002. Because Levis admitted that his possession was not exclusive for more than four years preceding the action, he did not make a prima facie showing that he is entitled to quiet title relief. To be clear, relief pursuant to the quiet title statute is only available if the plaintiff in such an action provides the legal basis for that title. The statute does not provide an independent basis for a claim of title.

[¶25] Viewing the facts and all reasonable inferences in the light most favorable to Levis, the record establishes that he cannot succeed in his claims of adverse possession or title under deed or in his quiet title action. We therefore conclude that the District Court did not err when it entered summary judgments in Konitzky's favor on those claims.

C. 2015 Order Denying Levis's Third Motion for Default Judgment

[¶26] Finally, Levis argues that the court abused its discretion by denying his motion for a default judgment in May 2015. He contends that (1) the court could not declare Konitzky an assignee of J. Henry Cartland because Konitzky had not made a timely appearance to make an affirmative claim to the land, and (2) the court incorrectly declared that all of Levis's

claims against all parties had been adjudicated. We review the denial of a motion for a default judgment for an abuse of discretion. *See Millett v. Dumais*, 365 A.2d 1038, 1040 (Me. 1976).

[¶27] Title 14 M.R.S. § 6653 provides that "[t]he grantee of any defendant named or described in the complaint, or any person claiming under such grantee, may voluntarily appear and become a party [to a quiet title action]. . . . If any person who becomes such grantee by conveyance recorded after the filing of the [court clerk's] certificate [in the registry of deeds] does not voluntarily appear, no such conveyance by the defendant shall be given in evidence . . . and the issue shall be determined as though no such conveyance were made." Levis contends that because Konitzky failed to file his answer by the deadline set by the court of September 2, 2011, the conveyance to him should not be recognized. Contrary to his contention, however, based on the court's subsequent order extending scheduling deadlines for thirty days, Konitzky's "voluntary appearance" was timely. The court accepted Konitzky's status as a defendant in an order dated January 25, 2012, and stated in its May 2015 order that "Konitzky, as assignee of Cartland's interest, was the only defendant to appear and defend in the case." Also, as the court made clear in its order denying Levis's motion for a default judgment, its entry of a

summary judgment in Konitzky's favor did not signify that Konitzky, or anyone else, had title to the disputed mudflat; it decided only that Levis had *not* proved *his* claim of title.

[¶28]  Levis's argument that the court erred in determining that all claims against all parties had been adjudicated because Cartland's unknown heirs and assigns had not appeared is also unavailing.  Through his quiet title action, Levis sought a declaration that he has title to the mudflat.  The court entered a summary judgment in Konitzky's favor because Levis was unable, as a matter of law, to make out that claim.  *See McGrath v. Hills*, 662 A.2d 215, 217 (Me. 1995) ("Showing no title in themselves, the plaintiffs cannot prevail even if it turned out that the defendants had no title." (quotation marks omitted)).  As the court stated, "What is fully resolved is that Levis does not have title to the disputed mudflats by virtue of adverse possession and Levis is not entitled to quiet title relief."  Entry of a default judgment against the Cartland heirs would be inconsistent with the court's adjudication of Levis's claim of title to the same property.  The court therefore did not exceed the bounds of its discretion in declining to enter a default judgment against the Cartland heirs.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Jason Dionne, Esq., and Juliana McKittrick, Esq., Isaacson & Raymond, P.A., Lewiston, for appellant James N. Levis

Thomas B. Federle, Esq., Federle Law, LLC, Augusta, for appellee Gustav Konitzky

**At oral argument:**

Jason Dionne, Esq., for appellant James N. Levis

Thomas B. Federle, Esq., for appellee Gustav Konitzky

Wiscasset District Court docket number RE-2009-59