STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-2022-224

CAMPBELL A. CLEGG and JENNIE CLEGG, )
)
)
)
Plaintiffs, )
)
v. )
)
AMERICAN AIRLINES, INC., )
)
Defendant. )

**ORDER ON PENDING MOTIONS**

This matter is before the Court on Defendant American Airlines, Inc.'s ("AA") Motion for Summary Judgment and Motion to Accept Entry of Motion for Summary Judgment Under M.R. Civ. P. 56, Modify the Scheduling Order, And/Or Enlarge the Dispositive Motion Deadline, Nunc Pro Tunc. Plaintiffs Campbell and Jennie Clegg ("the Cleggs") oppose both motions. For the following reasons, the Court grants AA's motions.

I.    **AA's Motion to Accept Entry of Motion for Summary Judgment**

AA moves for acceptance of its late-filed Motion for Summary Judgment. The Court's Order dated July 10, 2023, set a dispositive motion deadline of October 2, 2023. Although AA initially attempted to file its Motion for Summary Judgment before that deadline, they neglected to include the filing fee with their motion, so it was rejected by the clerk. AA represents that the Cleggs' counsel timely received the first attempted filing. A second filing was received by the Court by mail on October 16, 2023, but not docketed until October 22, 2023. AA neglected to copy the Cleggs' counsel on the second filing. Upon realizing their failure to copy counsel, AA then filed the pending motion. AA asserts that the motion should be granted because it will not delay trial and because good cause exists.

REC'D CUMB CLERKS OFC
JAN 01 '24 AM8:40

The Court "has discretion to allow a late-filed motion for summary judgment, even absent a showing of excusable neglect, if the request is made 'within such time as not to delay the trial.'" *Levis v. Konitzky*, 2016 ME 167, ¶ 17, 151 A.3d 20 (quoting M.R. Civ. P. 56(b)). When deciding whether to allow a late-filed motion for summary judgment, the Court should consider "whether the motion is interposed for the purpose of delay, and whether granting leave to file the motion will promote effective case management or result in undue costs to the parties or prejudice to the nonmoving party." *Id.*

The Court finds that AA's motion was not filed for the purpose of delay, that it will not delay trial, and that it presents an important legal issue that would be most efficiently decided through a motion for summary judgment. The Cleggs have already filed their opposition to the motion. No prejudice will result to them. Accordingly, the Court grants AA's Motion to Accept Entry of Motion for Summary Judgment and accepts the late-filed Motion for Summary Judgment.

## II.     AA's Motion for Summary Judgment

AA moves for summary judgment on the grounds that there is no genuine issue of material fact and that the Cleggs' claims are preempted by the federal Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1) (the "ADA").

### A.     Facts

The following facts are drawn from the summary judgment record.[1] Denials and qualifications are noted when relevant.

The Cleggs purchased five first-class tickets from AA on or around February 1, 2022, for a flight departing on the morning of May 14, 2022, from Albany, New York, to

---

[1] The summary judgment record consists only of the parties' properly supported statements of material fact and the portions of the record referenced therein. *See Dorsey v. N. Light Health*, 2022 ME 62, ¶ 10, 288 A.3d 386. To controvert a party's statement of fact, an opposing party must "support each denial or qualification by a record citation." M.R. Civ. P. 56(h)(2).

San Francisco, California, and returning on May 21, 2022. (AA's Supp'g S.M.F. ¶ 1.) When purchasing the tickets, the Cleggs agreed to the applicable Conditions of Carriage ("COC"). (AA's Supp'g S.M.F. ¶ 2.)[2]

The COC provide, in part:

When you buy a ticket or travel on a flight provided by American Airlines, you agree:

- To the extent not preempted by federal law, Texas law applies to this contract . . . .
- This contract cannot be modified or waived unless authorized in writing by an American Airlines corporate officer.

  . . .
- This contract is the entire agreement that governs your rights and responsibilities as a passenger. . . .

  . . .
- **Limit of liability**: You agree we are not liable for special, consequential, indirect or incidental damages that arise from this agreement, even if we knew, should've known or were advised damages were possible, including from lost, damaged or delayed bags (including lost revenue or business interruption).

(AA's Supp'g S.M.F. ¶ 14; AA's Ex. A.)

With regard to check-in, the COC provides:

When it comes to checking in and arriving at the airport, earlier is better. Give yourself extra time if you're checking bags or traveling internationally.
Check-in times

. . .
In most cities, you must be checked in:

- At least 45 minutes before scheduled departure, for flights within the U.S.

(AA's Supp'g S.M.F. ¶ 15; AA's Ex. A.) A "Check-in and arrival" information page linked in the COC advises:

Our recommended arrival times are meant to allow plenty of time to check in (with or without bags) and clear security before scheduled departure.

- Within the U.S. — at least 2 hours

---

[2] The Cleggs did not cite to the record in support of their qualification of this statement of material fact. Accordingly, it is deemed admitted without qualification.

(AA's Supp'g S.M.F. ¶ 16; AA's Ex. B.)[3]

On May 13, 2022, the Cleggs attempted to check into their flight online three times, but the online check-in system did not permit them to do so. (AA's Supp'g S.M.F. ¶ 3; Cleggs' Resp. AA's Supp'g S.M.F. ¶ 3; Cleggs' Add'l S.M.F. ¶ A.) AA's online system instructed the Cleggs to "Check in at Airport." (AA's Supp'g S.M.F. ¶ 4; Cleggs' Add'l S.M.F. ¶ B.)

The Cleggs arrived at the airport at 4:47 a.m. on May 14, and reached the ticket counter sometime before 5:00 a.m. (AA's Supp'g S.M.F. ¶ 6.) The flight was scheduled to depart at 6:04 a.m. on May 14, 2022. (AA's Supp'g S.M.F. ¶ 5.) The cut-off time for checking in under the COC is forty-five minutes before the scheduled departure of the flight. (AA's Supp'g S.M.F. ¶¶ 8-9.) This includes the time necessary for checking bags. (AA's Supp'g S.M.F. ¶ 10.)

When the Cleggs arrived at the ticket counter on May 14, an agent advised them that while she could see the reservation and see that seats had been assigned to the Cleggs, AA's computer system would not let her complete the check-in process. (Cleggs' Add'l S.M.F. ¶ E; AA's Supp'g S.M.F. ¶ 7.) The issues preventing the ticket agent from checking the Cleggs into their flight were not resolved before the cut-off time and they missed the cut-off to check in. (AA's Supp'g S.M.F. ¶¶ 8-9.) Boarding passes could not be issued. (AA's Supp'g S.M.F. ¶ 11.)

The agent advised the Cleggs that there was an AA flight leaving from Boston that afternoon that had availability. (Cleggs' Add'l S.M.F. ¶ F.) The agent advised that if she

---

[3] The language quoted in paragraph 17 of AA's Statement of Material Facts does not appear in the portion of the record cited. Accordingly, paragraph 17 is omitted from the Court's recitation of the facts in the record.

booked the flight from Boston, they would lose their return tickets, but if they booked the new flight themselves, the return tickets would be preserved. (Cleggs' Add'l S.M.F. ¶ G.)[4]

The Cleggs attempted to book the new AA flight themselves, but due to difficulties with the mobile application and price increases, they ultimately elected to book a flight with a different airline. (Cleggs' Add'l S.M.F. ¶ H.) The agent assured them that if they booked a flight on a different airline their return flight would not be affected if the agent did not rebook the flight. (Cleggs' Add'l S.M.F. ¶ I.)

The holders of the other three tickets that the Cleggs purchased on February 1, 2022, were able to check in online successfully on May 13, 2022, and arrived at the gate for their outbound flight at approximately 5:20 a.m. (Cleggs' Add'l S.M.F. ¶¶ C, D.) The Cleggs' assigned seats on their original outbound flight were empty. (Cleggs' Add'l S.M.F. ¶ J.)

The night before the Cleggs' return flight, they received an email from AA prompting them to check in for their return flight. (Cleggs' Add'l S.M.F. ¶ K.) When they attempted to check in online as prompted, they received an error message and were unable to check in. (Cleggs' Add'l S.M.F. ¶ L.)

The Cleggs then called AA to determine how to check in, at which point AA advised that their return tickets had been cancelled because they did not board the outbound flight. (Cleggs' Add'l S.M.F. ¶ M.) The Cleggs were not notified prior to this conversation that their return tickets had been canceled. (Cleggs' Add'l S.M.F. ¶ N.) The Cleggs never received a refund for the outbound or return flights. (Cleggs' Add'l S.M.F. ¶ O.)

---

[4] Material cited by AA in response to paragraphs G and I of the Cleggs' Additional Statement of Material Facts does not directly support their denial of those paragraphs. Accordingly, paragraphs G and I are deemed admitted.

**B.  Legal Standard**

Summary judgment is appropriate "if the summary judgment record, taken in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact in dispute and the moving party would be entitled to a judgment as a matter of law at trial." *Chartier v. Farm Fam. Life Ins. Co.*, 2015 ME 29, ¶ 6, 113 A.3d 234; *see* M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a 'genuine issue' when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Toto v. Knowles*, 2021 ME 51, ¶ 8, 261 A.3d 233 (quoting *Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 8, 13 A.3d 773). To survive a defendant's motion for summary judgment, a plaintiff must present a prima facie case for each challenged element of his claim. *See Boivin v. Somatex, Inc.*, 2022 ME 44, ¶ 10, 279 A.3d 393.

**C.  Discussion**

The Cleggs' Complaint consists of three counts: Count I for breach of contract, Count II for fraud, and Count III for violation of the Maine Unfair Trade Practices Act. AA contends that it is not liable under state law because all of the Cleggs' claims fall under the ADA, which contains an express preemption provision as follows:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1). The United States Supreme Court has interpreted section 41713(b)(1) as expressing a "broad pre-emptive purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992).

The United States Court of Appeals for the First Circuit has interpreted section 41713(b)(1) as requiring resolution of two questions to determine whether a claim is

preempted. *Brown v. United Airlines, Inc.*, 720 F.3d 60, 63 (1st Cir. 2013). First, "whether the arguably preempted claim is based on a state 'law, regulation, or other provision having the force and effect of law'" (the question of "mechanism"), and second, "whether the claim is sufficiently 'related to a price, route, or service of an air carrier'" (the question of "linkage"). *Id.* (quoting 49 U.S.C. § 41713(b)(1)).

The Cleggs concede that the "mechanism" prong is met as to their claims. (Cleggs' Opp'n to AA's Mot. Summ. J. 6.) As to linkage, the three counts of the Cleggs' Complaint arise from AA's failure to issue boarding passes, cancellation of their return tickets, and the ticket agent's representations about their return tickets. These claims are all clearly "related to a . . . service of an air carrier" within the plain meaning of the statute; that is, ticketing. The Cleggs' argument that their claims are not related to a service, but rather to a failure to render a service, is unpersuasive.

In the alternative, the Cleggs argue that an exception to preemption applies for breach of a "self-imposed undertaking" under *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995). The *Wolens* Court held that the ADA "allows room for court enforcement of contract terms set by the parties themselves," with "no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 222, 233.

The Cleggs argue that their breach of contract claim is not preempted because AA imposed obligations on itself through the COC and breached those obligations. Although they assert three ways in which AA breached the COC, the Cleggs only provide substantive argument and citation to specific provisions of the COC regarding AA's failure to refund.[5]

---

[5] Specifically, they assert that AA breached the COC when AA failed to issue a boarding pass, assist the Cleggs in rebooking their flights, and refund the ticket price.

To determine whether the COC obligated AA to issue a refund or whether there exists a dispute of fact on that issue, the Court must interpret the language of the COC. The Supreme Court of Texas[6] has held:

> We afford contract language its plain, grammatical, and ordinary meaning unless doing so "would clearly defeat the parties' intentions" or the instrument shows the parties used the terms in a different or technical sense.
>
> Whether a contract is ambiguous or not is a question of law. If a contract has a certain and definite meaning, the contract is unambiguous, and we will construe it as a matter of law and enforce it as written. A contract subject to more than one reasonable interpretation is ambiguous, giving rise to a fact issue regarding the parties' intent.

*Nettye Engler Energy, LP v. BlueStone Nat. Res.*, 639 S.W.3d 682, 690 (Tex. 2022).

The Cleggs claim they should have been issued a refund under two provisions of the COC.[7] First, they cite to a provision under the heading "Our responsibilities when there are schedule/operation changes" that reads: "If we or our airline partner fails to operate or delays your arrival more than 4 hours, our sole obligation is to refund the remaining ticket value and any optional fees according to our involuntary refunds policy, subject to our policy for rebooking your delayed/cancelled flight." (AA's Ex. A.)

This provision is plainly inapplicable. There is no dispute that the flight departed with the other members of the Cleggs' party on board. There was clearly no failure to operate or delay. The Cleggs' proposed interpretation of "fail[] to operate"—which they argue could mean fail to issue a boarding pass—is unreasonable and therefore does not generate an ambiguity.

Second, they point to a provision that reads:

---

[6] Because the COC provides that Texas law governs the parties' contractual relationship, the Court will apply Maine law to procedural matters and Texas law to substantive matters. *See McDonald v. Scitec, Inc.*, 2013 ME 59, ¶ 4 n.3, 79 A.3d 374.

[7] The Court would note that the Cleggs cite provisions of the COC which are not specifically cited or referenced in either party's statement of material facts.

**Involuntary refunds**

If you are due a refund because we failed to operate on schedule (a delay to your departure time of over 4 hours) or we refused to let you fly for reasons other than your violation of this contract, we will refund you:

- The full amount of the ticket and any extras if travel hasn't started

. . . .

(AA's Ex. A.)

This provision, read in the context of the COC as a whole, simply explains how much will be refunded *if* you are due a refund. (AA's Ex. A (emphasis added).) It does not, standing alone, obligate AA to issue a refund in any particular circumstance. The preceding provisions, such as the first provision cited by the Cleggs, provide *when* AA will issue a refund.

The COC provide that passengers must be checked in within forty-five minutes of scheduled departure in most cities. (AA's Supp'g S.M.F. ¶ 15; AA's Ex. A.) The Cleggs were denied boarding because they failed to arrive at the ticket counter early enough to complete the check-in process and check their bags as required by the COC. The COC does not obligate AA to refund when issues encountered during check-in take longer to resolve than the time between the customer's arrival and the cut-off time.[8] Accordingly, none of the Cleggs' claims falls within the *Wolens* exception to preemption.

Because there is no dispute of material fact and the Cleggs' claims are preempted by the ADA, AA is entitled to summary judgment on the Cleggs' Complaint.

---

[8] With regards to AA's failure to issue a boarding pass, the Cleggs do not cite any provision of the COC that obligates AA to issue a boarding pass after the check-in cutoff time has passed. The Cleggs do not argue that the COC obligate AA to refund a return ticket that is cancelled pursuant to their policies for missed flights, and no such provision is present in the record. And to be clear, any verbal representation by the ticket agent regarding the preservation of their return tickets would not impose an obligation on AA under the COC because the COC provide that its terms "cannot be modified or waived unless authorized in writing by an American Airlines corporate officer." (AA's Supp'g S.M.F. ¶ 14; AA's Ex. A.)

## III. Conclusion

For the foregoing reasons, the Court will grant both of AA's pending motions.

The entry is:

1. Defendant American Airlines, Inc.'s ("AA") Motion to Accept Entry of Motion for Summary Judgment Under M.R. Civ. P. 56, Modify the Scheduling Order, And/Or Enlarge the Dispositive Motion Deadline, Nunc Pro Tunc is GRANTED, and the Motion for Summary Judgment is accepted as filed; and

2. AA's Motion for Summary Judgment is GRANTED. Judgment is entered for AA on Plaintiffs Jennie and Campbell Clegg's Complaint.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _January 30, 2024_

_____
Mary Gay Kennedy, Justice
Maine Superior Court

Entered on the Docket: 01/31/2024

Plaintiffs-Lee Bals, Esq.
Defendant-William Smart, Esq.